KELSEY C. LINNETT (CSBN 274547)
ANDREW MAST (CSBN 284070)
ARSHIA NAJAFI (CSBN 311229)
Trial Attorneys
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue, Room 10-0101
San Francisco, California  94102-3478
Telephone: (415) 934-5300
andrew.mast@usdoj.gov

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br>  v.<br><br>YAMA MARIFAT,<br><br>         Defendant. | CASE NO. 2:17-CR-0189 WBS<br><br>**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE INDICTMENT AS INSUFFICIENT**<br><br>DATE: April 16, 2018<br>TIME: 9:00 a.m.<br>COURT: Honorable William B. Shubb |

**INTRODUCTION**

Defendant Yama Marifat's motion to dismiss the single-count Indictment charging him with bid rigging in violation of the Sherman Act, 15 U.S.C. § 1, on the basis that the Indictment fails to state a claim should be denied.[1]  The Indictment sets forth all the elements of the charged offense in sufficient detail to provide Marifat notice of the offense charged and to plead double jeopardy.

**ARGUMENT**

**A. Legal Standard**

An indictment "must be a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).  Accordingly, "[a]n indictment is sufficient

---

[1] Marifat incorporates, without specificity, the arguments from his Motion to Dismiss the Indictment and Motion for Bill of Particulars, into each other.  *See* Dkt. 21, p. 2, fn. 1 and Dkt. 22, p. 2, fn. 1.

if it: (1) contains the elements of the offense charged and fairly informs a defendant of the charge against him which he must defend; and (2) enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Lazarenko*, 564 F.3d 1026, 1033 (9th Cir. 2009) (internal quotation marks omitted); *see also United States v. Rodriguez,* 360 F.3d 949, 958 (9th Cir. 2004) (same). An indictment "should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied." *Lazarenko*, 564 F.3d at 1033. It must be "liberally construed in favor of validity" and it is required only that the "necessary facts appear in any form or by fair construction in an indictment." *United States v. Holden*, 806 F.3d 1227, 1233 (9th Cir. 2015) (*quoting United States v. James*, 980 F.2d 1314, 1316 (9th Cir. 1992)).

An indictment that tracks the statutory language suffices if it unambiguously sets forth all of the elements of the offense. *United States v. Givens*, 767 F.2d 574, 584 (9th Cir. 1985). An indictment may set forth the offense in the words of the statute itself, as long as "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *United States v. Mancuso*, 718 F.3d 780, 789 (9th Cir. 2013) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1882)). The sufficiency of an indictment is therefore judged by whether it "fairly informs the defendant of the charge, not whether the Government can prove its case." *United States v. Blinder*, 10 F.3d 1468, 1471 (9th Cir. 1993) (citation and internal quotation marks omitted). "[T]he test of the sufficiency of the indictment is not whether it could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards. *United States v. Hinton*, 222 F.3d 664, 672 (9th Cir. 2000) (citing *United States v. Rosi*, 27 F.3d 409, 415 (9th Cir. 1994)).[2]

//
//
//
//

---

[2] *See also United States v. Charnay*, 537 F.3d 341, 352-53 (9th Cir. 1976) ("The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.") (internal quotation marks and citations omitted).

**B. The Indictment Contains the Elements of the Offense Charged and Fairly Informs Marifat of the Charge Which He Must Defend**

The Indictment alleges that, beginning in or about April 2009 and continuing until in or about October 2009, Marifat and other co-conspirators knowingly entered into and engaged in a combination and conspiracy to suppress and eliminate competition by rigging bids to obtain selected properties offered at non-judicial public real estate auctions in San Joaquin County.  *See* Doc. No. 1 ("Indictment") at ¶ 2.  The Indictment also alleges that Marifat and co-conspirators agreed not to compete, refrained from or stopped bidding, and instead designated which conspirator would bid for the selected properties, to purchase selected properties at public auctions in San Joaquin County.  *Id.* at ¶¶ 4(a)-(c).  Furthermore, the Indictment alleges that the business activities of Marifat that are the subject of the Indictment were within the flow of, and substantially affected interstate commerce because the proceeds from the sale of properties were transmitted from auctions in California, to trustees in other states, and from trustees to beneficiaries located in other states.  *Id.* at ¶¶ 8(a)-(c).

As illustrated above, the Indictment contains all the elements of the Sherman Act offense charged which consist of:  1) an agreement to rig bids existed at or about the time alleged, 2) the defendant's knowing participation, and 3) that the conspiracy occurred in the flow of interstate commerce.  *See, e.g., United States v. Katakis et al.*, CR 11-511 , (E.D. Cal. 2014), Doc. 268 at 19 (Jury Instructions Given); *see United States v. Alston*, 974 F.2d 1206, 1210 (9th Cir. 1992); *United States v. Guthrie*, 814 F. Supp. 942, 947-49 (E.D. Wash. 1993), *aff'd mem.*, 17 F.3d 397 (9th Cir. 1994) (analyzing the jury instructions for a bid-rigging offense).  The Indictment also includes additional facts supporting each element of the bid-rigging charge.  For example, it details the nature of the conspiracy which consisted of bid-rigging agreements to obtain selected properties at the public auctions in San Joaquin County, the time period of the conspiracy charged (April-October 2009), how a continuing agreement existed among Marifat and co-conspirators to refrain from bidding against each other for selected properties, and how the bid-rigging conspiracy occurred within the flow of interstate commerce.  *Id.* at ¶¶ 2-3.

//

//

Separate and apart from the facts supporting each element, the Indictment also provides additional information including a description of the public real estate auctions, Marifat's role as a purchaser of real estate at these auctions, and the utilization among the conspirators of second, private auctions to determine the payoff amounts and who would be awarded the selected properties pursuant to the conspiracy. *Id.* at ¶¶ 4(e)-(f), 5, and 6. This is not a barebones indictment that relies on boilerplate statutory language. Given the sufficient detail of facts alleged in the Indictment, Marifat is sufficiently apprised of the charge.

Marifat argues that the Indictment is insufficient because it does not contain a litany of specific facts he demands such as: 1) when the conspiracy began; 2) who was in the conspiracy, and 3) more specific details relating to Marifat's and coconspirators' roles. Dkt. 21 at 5-6. Marifat also argues that the Indictment is insufficient because it does not specify the properties Marifat purchased. *Id.*

None of the facts (or lack thereof) identified by Marifat are required for an indictment to be sufficient. An indictment is not deemed insufficient for omitting the exact time when the conspiracy began. *United States v. Forrester*, 616 F.3d 929, 941 (9th Cir. 2010) (holding an indictment sufficient that only gave a semi-discrete time period of an end date but no beginning date); *United States v. McCown*, 711 F.2d 1441, 1450–51 (9th Cir. 1983) (finding indictment sufficient which "states . . . the time during which the conspiracy was operative, states the purpose of the conspiracy. . ., cites the statutes allegedly violated. . ., [and] gives the approximate location of the conspiratorial activities."). In this case, the Indictment alleges both a beginning and an end date of the bid-rigging conspiracy, which existed from "in or about April 2009 and continuing until in or about October 2009." Indictment ¶ 2.

Nor will an indictment be deemed insufficient for failing to specify, by name, other coconspirators. *See United States v. James*, 2015 WL 7274041, at *3 (D. Mont. Nov. 17, 2015) (rejecting a challenge to the sufficiency of an indictment that did not specifically name defendant's alleged co-conspirators). Likewise, an indictment does not have to allege specific facts outlining the role of the defendant and each coconspirator. *See generally United States v. Milburn*, 2007 WL 3101311, at *5 (N.D. Cal. Oct. 22, 2007) (denying a request for bill of particulars specifying roles

//

//

played by each defendant where indictment described the members, the goals of the conspiracies, the ways, manner and means to accomplish the conspiracies, and the overt acts).

Finally, the Indictment is not insufficient for failing to specify the properties purchased by Marifat.  An indictment does not have to "specify the theory upon which those facts will be proved at trial" or explain "the evidence upon which the proof will rest." *United States v. Markee*, 425 F.2d 1043, 1047 (9th Cir. 1970).

Marifat's reliance on the Supreme Court's ruling in *Russell v. United States*, 369 U.S. 749 (1962), which found several indictments deficient, is unpersuasive.  In *Russell*, the indictments at issue charged violations of 2 U.S.C. § 192 which criminalizes a witness's refusal to answer a question that is the subject of an inquiry by a congressional committee.  None of the indictments in *Russell* identified the subject matter of the congressional inquiry at issue.  The Court found that the very core of criminality under 2 U.S.C. §192 was the "pertinency to the subject under inquiry of the questions which the defendant refused to answer." *Russell*, 369 U.S. at 764.  As the Court noted, "there can be criminality under the statute only if the question which the witness refused to answer pertained to a subject then under investigation by the congressional body which summoned him. . . . [A] witness rightfully may refuse to answer where. . . the questions asked are not pertinent to the matter under inquiry." *Id.* at 755 (internal citation and quotation marks omitted).   Since none of the indictments identified the subject of inquiry by the congressional committee, the Court found that the indictments were deficient.

The deficiency in the *Russell* indictments is not present in this case.  The single-count Indictment charging Marifat follows substantially the wording of the Sherman Act and includes all the elements of the crime.  As discussed above, the Indictment contains additional facts and details that support each element of the bid-rigging charge and provides context regarding the alleged conspiracy.  Unlike in *Russell*, the Indictment omits no details essential to charging a crime.  In fact, three other defendants implicated in the same bid-rigging conspiracy proceeded to trial on a superseding indictment containing a bid-rigging count substantially similar to the one charged in Marifat's Indictment. *See United States v. Katakis et al.*, 2:11-CR-511 WBS, Doc. 136.  Like the *Katakis* defendants, Marifat is sufficiently apprised of the charge.

//

### C. The Indictment Enables Marifat to Plead an Acquittal or Conviction in Bar of Future Prosecutions

The additional facts sought by Marifat are also not required in order to foreclose him from pleading double jeopardy. The Indictment sets out the time period and subject of the bid-rigging conspiracy (the public auctions), the county of the properties (San Joaquin County), as well as the means and methods in which the conspiracy was carried out. ¶¶ 2-5, and 8.

Marifat argues that the Indictment does not foreclose a bar from future prosecutions because "the Indictment may be interpreted as an agreement between any number of unknown individuals, and does not exclude the possibility that the Government may allege there to be separate, overlapping, or parallel conspiracies, rendering it impossible to determine which of these conspiracies would be barred by a subsequent prosecution." Dkt. 21 at 6. Yet the Indictment alleges a single, continuing agreement existed among Marifat and co-conspirators to refrain from bidding against each other to purchase selected properties at public auctions in San Joaquin County. Indictment at ¶ 3. The time period of the conspiracy and location of the public auctions are very specific. There is no other way to interpret the allegations in the Indictment.

Moreover, a single conspiracy can involve several subagreements or subgroups of conspirators. *United States v. Torres*, 869 F.3d 1089, 1102 (9th Cir. 2017). Hence, Marifat would not be foreclosed from pleading double jeopardy if he were somehow faced with a future prosecution for rigging a subset of properties that were auctioned in San Joaquin County with any combination of conspirators within the time frame alleged in the Indictment. To the extent that Marifat intends to argue that each rigged property was a separate conspiracy unto itself, or that he joined some other conspiracy, such arguments pertain to the sufficiency of the *evidence* and have no bearing on whether the *Indictment* itself is sufficient. *See United States v. Bauer*, 84 F.3d 1549, 1560 (9th Cir. 1996) ("The question whether a single conspiracy, rather than multiple conspiracies, has been proved is a question of sufficiency of the evidence.") (citation omitted).

//

//

//

## CONCLUSION

The Indictment contains sufficient facts and details alleging all the elements of the Sherman Act offense and fairly informs Marifat of the charge which he must defend.  Furthermore, Marifat would be fully protected from double jeopardy since the allegations and time period outlined in the Indictment are clear.  Hence, the motion to dismiss the Indictment as insufficient should be denied.

.

                                                        Respectfully submitted,

DATE: March 26, 2018                       /s/ Andrew Mast
                                                 ANDREW MAST
                                                 ARSHIA NAJAFI
                                                 Trial Attorneys
                                                 Antitrust Division
                                                 United States Department of Justice