DAVID J. COHEN, ESQ.
California Bar No. 145748
ALEXANDER P. GUILMARTIN, ESQ.
California Bar No. 306787
**BAY AREA CRIMINAL LAWYERS, PC**
300 Montgomery Street, Suite 660
San Francisco, CA 94104
Telephone: (415) 398-3900

Attorneys for Defendant **Yama Marifat**

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>YAMA MARIFAT,<br><br>Defendant. | Case No. 2:17-CR-00189 WBS<br><br>**MR. MARIFAT'S MOTION *IN LIMINE* FOR SPECIFIC PERFORMANCE OF PROFFER AGREEMENT**<br><br>Date: September 24, 2018<br>Time: 9:00 a.m.<br>Ctrm: 5 |

**I.**

**INTRODUCTION**

Pursuant to extensive plea negotiations and at its behest, Yama Marifat made four statements to the government on four separate dates: June 24, 2010; June 25, 2010; August 6, 2010; and September 13, 2010. On August 6, 2010, Mr. Marifat reviewed and signed a "queen-for-a-day" proffer agreement with the government that expressly applied to the statements made on June 24 and June 25, as well as the statements that would be made on August 6. The agreement was reviewed and initialed again on September 13, extending its ambit to that continuation of Mr. Marifat's interview. The proffer agreement bars the government from using statements made on those dates "in its case-in-chief, or in connection with any sentencing

Mr. Marifat's Motion *In Limine* for Specific Performance of Proffer Agreement
*U.S. v. Marifat;*
Case No. 2:17-CR-00189 WBS

proceeding for the purpose of determining an appropriate sentence." *See* Exhibit A – Proffer Agreement.

On February 24, 2011, Mr. Marifat entered into a plea agreement with the government; this agreement would later be filed with the court on March 4, 2011. *See* dkt. 11, case no. 2:11-cr-39. On March 7, 2011, Mr. Marifat appeared before the court, entered a plea of guilty, and made a number of statements pursuant to that plea and the court's antecedent and subsequent colloquies.

On April 24, 2017, this court ordered Mr. Marifat's guilty plea withdrawn pursuant to his motion and as a result of statutory and constitutional inadequacies in the court's plea colloquy. *See* dkt. 95, case no. 2:11-cr-39. Following the dismissal of the information, the government indicted Mr. Marifat and the matter is scheduled to be tried on October 2, 2018.

The government has declared its intention to seek to introduce in its case-in-chief the four sets of statements Mr. Marifat made pursuant to his proffer agreement with the government.  Mr. Marifat anticipates the government's filing of a motion *in limine* to that effect on September 4, 2018. The government has indicated it will contend that a provision of the plea agreement prohibits Mr. Marifat from enjoying the protections of the United States Constitution, Fed. R. Crim. P. 11(f), or Fed. R. Evid. 410, and thus that it may freely use against Mr. Marifat "statements made by the defendant before or after this Agreement." The government also apparently intends to take the position that the terms of the plea agreement supersede those of the earlier proffer agreement, thereby nullifying the provisions of the proffer agreement barring the government from using at trial the statements Mr. Marifat made in his four 2010 interviews.

Mr. Marifat's Motion *In Limine* for Specific Performance of Proffer Agreement
*U.S. v. Marifat;*
Case No. 2:17-CR-00189 WBS

2

However, the government's efforts to introduce against Mr. Marifat his statements made pursuant to plea negotiations and as a direct consequence of his now-withdrawn plea operate as a breach of the original proffer agreement. The proffer agreement remains in effect and has not been superseded by the plea agreement, which makes no mention of an earlier proffer agreement and was, in any event, voided by Mr. Marifat's April 24, 2017 withdrawal of his plea. The government may not now rely on the plea agreement to render admissible evidence that is made strictly inadmissible by law, nor may it breach a contractual agreement reached by the parties before any plea was entered. Mr. Marifat presently moves this court for an order mandating specific performance of the proffer agreement.

**II.**

**THE GOVERNMENT HAS BREACHED THE PROFFER AGREEMENT, AND SPECIFIC PERFORMANCE IS THE APPROPRIATE REMEDY.**

The government has plainly violated the terms of the proffer agreement in this case, and the government's breach compels specific performance of the agreement's terms. According to the explicit terms of the proffer agreement, in exchange for Mr. Marifat's statements, the government agreed not to "offer [the statements] in evidence in its case-in-chief, or in connection with any sentencing proceeding for the purpose of determining an appropriate sentence." Yet that is now precisely what the government seeks to do, as it has declared its intention to move *in limine* to admit the statements Mr. Marifat made pursuant to his proffer agreement. This decision constitutes a breach of the agreement. The only appropriate remedy for the government's breach must be that this court order specific performance of the proffer agreement.

"Informal immunity agreements, such as proffer agreements, 'are shaped . . . by the language of the contract conferring the immunity'" and should be primarily guided by contract-

Mr. Marifat's Motion *In Limine* for Specific Performance of Proffer Agreement
*U.S. v. Marifat;*
Case No. 2:17-CR-00189 WBS

3

1
2
3
4
5
6

law principles. *United States v. Melvin*, 730 F.3d 29, 37 (1st Cir. 2013), quoting *United States v. Hogan*, 862 F.2d 386, 388 (1st Cir. 1988); *see also United States v. Khan*, 920 F.2d 1100, 1105 (2d Cir. 1990) ["[C]ooperation agreements, like plea bargains may usefully be interpreted with principles borrowed from the law on contract."]; *United States v. Cobblah*, 118 F.3d 549, 551 (7th Cir. 1997).

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

For that reason, it is helpful to look to principles of contract law exercised in cases involving plea agreements for guidance on the issue of a breach of a proffer agreement. Even compliance with the explicit terms of a plea agreement can constitute a breach when executed in a manner that renders the agreement's promises illusory. *United States v. Whitney*, 673 F.3d 965, 972 (9th Cir. 2012), citing *United States v. Franco-Lopez*, 312 F.3d 984, 988-89 (9th Cir. 2002). It is of no import whether the breach of the agreement is done inadvertently or on purpose (*Mabry v. Johnson*, 467 U.S. 504, 511 (1984); *Brown v. Poole*, 337 F.3d 1155, 1161 (9th Cir. 2003)), just as it matters not whether the government acted in good faith or bad (*Franco-Lopez*, *supra*, 312 F.3d at 992).  It is of equally little significance whether the government's breach is a result of a decision made or a promise that has become unfulfillable by way of circumstance. *United States v. Anderson*, 970 F.2d 602, 607 (9th Cir. 1992); *United States v. Cook*, 668 F.2d 317, 320 (7th Cir. 1982). In determining whether the government has breached the plea agreement, the dispositive question is what the defendant reasonably understood the agreement to guarantee. *Anderson*, *supra*, 970 F.2d at 607; *United States v. Packwood*, 848 F.2d 1009, 1011 (9th Cir. 1988); *United States v. Arnett*, 628 F.2d 1162, 1164 (9th Cir. 1979).

26
27
28

Once a government breaches a plea agreement, one of the available remedies for a defendant is specific performance of the agreement. *Brown v. Poole*, 337 F.3d 1155, 1161 (9th

Mr. Marifat's Motion *In Limine* for Specific Performance of Proffer Agreement
*U.S. v. Marifat;*
Case No. 2:17-CR-00189 WBS

Cir. 2003); *Buckley v. Terhune*, 441 F.3d 688, 699 (9th Cir. 2006); *Santobello v. New York*, 404

U.S. 257, 263 (1971). Likewise, specific performance of a proffer agreement may be compelled

by the government's breach of the agreement's terms. *United States v. Santiago-Rodriguez*, 993

F. Supp. 31, 36 (D.P.R. 1998); *United States v. Gerant*, 775 F. Supp. 182, 185 (D. Md. 1991);

*see also United States v. Hai Van Tran*, No. 06-CR-39-C, 2007 U.S. Dist. LEXIS 3746, at *13

(W.D. Wis. Jan. 14, 2007) [describing rescission of a proffer agreement after a breach as

requiring suppression of the proffer statements].

Notably, "[p]roffer agreements are sui generis, and the contract-law principles that

courts use in construing them are glossed with a concern that the defendant's consent to appear

at a proffer session should not become a lever that can be used to uproot his right to

fundamental fairness under the Due Process Clause." *Melvin*, *supra*, 730 F.3d at 39; *see also*

*United States v. $87,118.00 in U.S. Currency*, 95 F.3d 511, 517 (7th Cir. 1996). "Because the

government's adherence to the terms of the proffer agreement is insured by the Due Process

Clause, its failure to adhere is perforce of constitutional dimension." *Ibid*.

The government here breached the proffer agreement by seeking to use Mr. Marifat's

proffer statements against him. The Ninth Circuit has called the government's attempt to use

information furnished by a defendant in a debriefing which it had promised in the plea

agreement not to use an example of a "clear breach" of the agreement.[1] *Whitney*, *supra*, 673

F.3d at 970. The Court explained how such a breach undermines the integrity of the judiciary:

> With respect to the government's improper disclosure, its promise of non-
> disclosure initially made in the informal immunity agreement as a part of the

---

[1] A memorandum disposition from the Ninth Circuit held similarly, reversing on the basis of the government's breach of the plea agreement by its use of statements made by the defendant in his proffer interview. *United States v. D.P.*, 720 F. App'x 390, 392 (9th Cir. 2018) ["Without such strict adherence to the language that prohibits [the use of proffer statements] at sentencing, it has no value to the defendant and therefore any trained defense attorney would not permit her client to enter into such an agreement"].

Mr. Marifat's Motion *In Limine* for Specific Performance of Proffer Agreement
*U.S. v. Marifat;*
Case No. 2:17-CR-00189 WBS

parties' first discussions and reasserted in the plea agreement, induced Whitney to make statements of a possibly inculpatory nature. Allowing the government to breach its reciprocal obligation would violate the judicially-sanctioned plea bargaining process that requires that promises made by the government which induce the forfeiture of the defendant's rights must be fulfilled.

*Id.* at 974. Likewise here the government's attempts to use against Mr. Marifat the statements he made in debriefing and proffer sessions violates the terms and spirit of both the proffer and plea agreements, reneging on the government's promises to use his statements only for purposes of plea negotiations and sentencing pursuant thereto (and not in order to obtain a conviction at a future trial).

The First Circuit has directly addressed a violation of a proffer agreement by the government in the form of the government's attempts to use against the defendant statements he had made pursuant to the proffer agreement. *United States v. Jiménez-Bencevi*, 788 F.3d 7, 20 (1st Cir. 2015). The Court considered this breach of the agreement to be reversible error, calling it "a violation of [the defendant's] right to due process of law." *Ibid.* It decided similarly in *United States v. Melvin*, 730 F.3d 29, 40 (1st Cir. 2013), vacating the defendant's conviction after the government violated the terms of the proffer agreement by offering statements the defendant had made pursuant to that agreement.

The "queen-for-a-day" proffer agreement remains applicable to Mr. Marifat's four interviews with the government, and should be enforced. The government's breach of the explicit terms of the agreement compels an order from this court mandating specific performance.

///

Mr. Marifat's Motion *In Limine* for Specific Performance of Proffer Agreement
*U.S. v. Marifat;*
Case No. 2:17-CR-00189 WBS

# III.

## THE EXISTENCE OF A NOW RESCINDED PLEA AGREEMENT DOES NOT SERVE TO SUPERSEDE OR ALTER THE TERMS OF THE PROFFER AGREEMENT.

The fact that the parties entered into a plea agreement does nothing to alter or mitigate the force of the provisions of the earlier proffer agreement. This is particularly so because Mr. Marifat successfully withdrew his guilty plea, thereby rendering the plea agreement a nullity.

**A.**    **The Plea Agreement Was Voided by Mr. Marifat's Withdrawal of His Plea and Cannot Supersede the Prior and Still Valid Proffer Agreement.**

The now-rescinded plea agreement in this case made no mention of the earlier proffer agreement, nor did it contain any provisions stating that it was intended to supersede any prior understandings between the parties. Although the government has indicated that it intends to argue that the signing of the plea agreement voided the earlier proffer agreement, Mr. Marifat has identified no case law supportive of this contention in the circumstances present here. To the contrary, one unpublished decision from the Ninth Circuit discusses the important distinction between the effect of a plea agreement that remains in place and one that has been rescinded by way of the defendant's withdrawal of her plea:

> First, the plea agreement did not supercede [*sic*] the original proffer agreement. The plea agreement in this case failed as a result of Smith's decision not to abide by his plea bargain. In the end, Smith chose not to enter into a binding plea agreement with the government--he was indicted with the other defendants. While Smith points to <u>United States v. Thornton</u>, 197 F.3d 241, 253 (7th Cir. 1999), to support his claim that "proffer letters . . . seem of scant relevance at trial when a subsequent, superceding plea agreement has been reached," Smith fails to realize that the <u>Thornton</u> court was addressing the relevance of proffer letters in relation to successful plea agreements. Because the plea agreement in the case at bar did not survive, it could not "supercede" any other agreements.

*United States v. Whitmore*, 35 F. App'x 307, 325 (9th Cir. 2002).

Put simply, even if the plea agreement *were* relevant to the government's use of statements Mr. Marifat made pursuant to his "queen-for-a-day" status, the plea agreement

Mr. Marifat's Motion *In Limine* for Specific Performance of Proffer Agreement
*U.S. v. Marifat;*
Case No. 2:17-CR-00189 WBS

7

1  would not be enforceable by the government at this stage of the proceedings. The Ninth Circuit

2  has repeatedly held that by withdrawing her guilty plea, a criminal defendant voids her plea

3  agreement, leaving "nothing left to enforce." *Fox v. Johnson*, 832 F.3d 978, 987 (9th Cir.

4  2016); *see United States v. Partida-Parra*, 859 F.2d 629, 634 n.6 (9th Cir. 1988) ["When the

5  district court exercises its power under the Federal Rules to reject a plea agreement or permit a

6  defendant to withdraw his plea, it is clear by implication that the parties are consequently

7  released from their obligations under the plea agreement."]. In *Fox*, after the defendant

8  successfully withdrew her guilty plea, her request to enforce provisions of the plea agreement

9  was denied because those terms had been rendered "no longer operative" by her withdrawal.

10  *Ibid*. This Court ruled similarly in *United States v. Burdeau*, 168 F.3d 352 (9th Cir. 1999),

11  holding that the defendant's withdrawal of her plea served to rescind the agreement and barred

12  the district court from enforcing its now-defunct provisions. So too has the Sixth Circuit,

13  holding that a defendant's successful withdrawal of her plea "nullifies" the plea agreement and

14  renders the parties "no longer bound by its promises therein." *United States v. Jones*, 469 F.3d

15  563, 566 (6th Cir. 2006). Specific performance of a plea agreement is granted only in those

16  circumstances where the defendant seeks it, rather than requesting withdrawal. *Cuero v. Cate*,

17  827 F.3d 879 (9th Cir. 2016). Here, by contrast, Mr. Marifat moved for withdrawal of his plea

18  and, as necessarily follows, rescission of his plea agreement; he did not seek specific

19  performance of any of the agreement's terms, and the government may not now do so in his

20  stead.

**B.** **Mr. Marifat Did Not Knowingly Waive the Protections Bargained for in the Proffer Agreement by Entering Into a Plea Agreement that Made No Mention of the Prior Proffer Agreement.**

Although the plea agreement was voided by Mr. Marifat's withdrawal of his guilty plea,

it is equally important that none of the terms of the plea agreement make reference to the

Mr. Marifat's Motion *In Limine* for Specific Performance of Proffer Agreement
*U.S. v. Marifat;*
Case No. 2:17-CR-00189 WBS

8

proffer agreement or seek to alter the promises made therein. Were any of the plea agreement's provisions interpreted to implicitly speak to the earlier proffer agreement, the effect would be to further render the plea agreement one that Mr. Marifat did not knowingly and voluntarily enter into.

A guilty plea, and the waivers of constitutional and statutory rights that accompany it, are only valid where they are knowingly and voluntarily entered into. *Brady v. United States*, 397 U.S. 742, 90 S. Ct. 1463 (1970). Certainly it is not the case that Mr. Marifat intended to alter his earlier proffer agreement with the government by entering into a plea agreement. Given the fact that the plea agreement contains no reference to the proffer agreement whatsoever, nothing in the plea agreement indicated to Mr. Marifat that his signing of that agreement would nullify the protections he had earlier bargained for and obtained pursuant to his proffer agreement. Were this court to order an evidentiary hearing, Mr. Marifat's counsel at the time of his proffer and plea would assuredly confirm that Mr. Marifat at no point intended to void his proffer agreement, nor was he counseled that entering into a plea agreement would have such an effect. Indeed, it is unlikely that *any* cooperative defendant would enter into a plea agreement if she knew that in doing so, she was sacrificing the protections of her earlier proffer agreement. Mr. Marifat could not have knowingly and voluntarily waived his proffer protections without having any knowledge that his plea agreement had an effect on those protections. This court cannot enforce an unknowing waiver, and should not enforce one that does not appear from the face of the plea agreement in any event.

///

Mr. Marifat's Motion *In Limine* for Specific Performance of Proffer Agreement
*U.S. v. Marifat;*
Case No. 2:17-CR-00189 WBS

9

**IV.**

**<u>CONCLUSION</u>**

For the above reasons, Mr. Marifat respectfully requests this court issue an order compelling specific performance of the August 6, 2010 "queen-for-a-day" proffer agreement.

Respectfully submitted,

**BAY AREA CRIMINAL LAWYERS, PC**

Dated: September 4, 2018          By:/s/David J. Cohen

DAVID J. COHEN, ESQ.

Attorneys for Defendant **Yama Marifat**

Mr. Marifat's Motion *In Limine* for Specific Performance of Proffer Agreement
*U.S. v. Marifat;*
Case No. 2:17-CR-00189 WBS