ANDREW MAST (CSBN 284070)
JENNIFER HANE (CSBN 275729)
ARSHIA NAJAFI (CSBN 311229)
Trial Attorneys
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue, Room 10-0101
San Francisco, California 94102-3478
Telephone: (415) 934-5300
andrew.mast@usdoj.gov

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:17-CR-0189 WBS |
|---|---|
| Plaintiff, | **UNITED STATES' MOTION TO ADMIT DEFENDANT'S ADMISSIONS** |
| v. | |
| YAMA MARIFAT, | DATE: September 24, 2018 <br> TIME: 10:00 a.m. <br> COURT: Honorable William B. Shubb |
| Defendant. | |

## INTRODUCTION

The government seeks to introduce in its case-in-chief defendant Yama Marifat's statements at his change of plea hearing and during interviews with the government prior to entering his guilty plea. Although statements made during a plea hearing or plea negotiations are inadmissible at trial under Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(f), those protections do not apply here because Marifat explicitly waived them in the plea agreement. His statements are therefore admissible as party-opponent admissions proving that Marifat participated in the bid-rigging conspiracy at the San Joaquin County real estate foreclosure auctions. The government seeks a pretrial order permitting it to refer to Marifat's admissions in its opening statement and to avoid undue delay from mid-trial litigation over the admissibility of these statements.

//

## FACTUAL BACKGROUND

On June 24 and 25, August 6, and September 13, 2010, the government interviewed Marifat in the presence of his attorney under a proffer agreement. In that agreement, Marifat explicitly agreed that any statement he made at his interviews would be admissible to impeach or "rebut any evidence or arguments" he made at trial. Najafi Decl. ¶ 7, Ex. E at 1 (Proffer Agreement). During each of these interviews, Marifat admitted to bid rigging at the San Joaquin County foreclosure auctions. These interviews were memorialized in an FBI 302 report and two interview reports written by an Antitrust Division paralegal. Najafi Decl. ¶¶ 8–10, Ex. F, G and H (Interview reports).

On January 28, 2011, the government filed an information charging Marifat with bid rigging.[1] On February 24, 2011, Marifat signed a written plea agreement with the government in which he agreed to plead guilty and also waive certain rights in the event he later withdrew his guilty plea:

> [I]f the defendant successfully moves to withdraw his plea: (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this Agreement, shall be admissible in evidence in any criminal . . . proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this Agreement, or any leads derived therefrom, should be suppressed. Najafi Decl. ¶ 3, Ex. A at 6 (Plea Agreement).

During plea negotiations Marifat was represented by two privately retained attorneys. By signing the plea agreement, Marifat confirmed that he "read [his] Plea and Cooperation Agreement and carefully reviewed every part of it with [his] attorney." *Id.* at 15. Additionally, Marifat's attorneys acknowledged that they "read this Plea and Cooperation Agreement and have discussed it fully with [their] client." *Id.* The plea agreement stated that no agreements or promises between the government and defendant existed outside the plea agreement.

//
//
//
//

---

[1] Marifat was also charged with conspiracy to commit mail fraud. The present indictment charges Marifat with bid rigging only.

On March 7, 2011, Marifat pleaded guilty to bid rigging.[2] During the Rule 11 hearing, the prosecutor recited the factual basis, which was appended to the plea agreement. The factual basis states:

> Beginning in or about April 2009 and continuing until in or about October 2009 (relevant period), defendant participated in a conspiracy to rig bids at public real estate auctions held in San Joaquin County, California, located in the Eastern District of California. The primary purpose of this conspiracy was to suppress and restrain competition and obtain selected real estate offered at San Joaquin County public auctions at non-competitive prices. During the relevant period, defendant and his co-conspirators reached agreements not to bid against one another and to allocate properties among themselves. To carry out their agreements, defendant and his co-conspirators refrained from bidding or refrained from bidding up the price for auctioned properties. In many instances, defendant and his co-conspirators held private auctions, open only to members of the conspiracy, to rebid the property. Defendant and his co-conspirators awarded the property to the conspirators who submitted the highest bid at the private auctions. Defendant and his co-conspirators distributed the proceeds of the private auctions as payoffs to the other, unsuccessful bidders in the private auction, based upon a predetermined formula agreed upon by the members of the conspiracy, for refraining from bidding on the property at the public auction.
> During the relevant period, the business activities of the defendant and co-conspirators were within the flow of, and substantially affected, interstate trade and commerce. For example, mortgage holders located in states other than California held mortgages, appointed trustees, and received proceeds from the public auctions that were subject to the bid rigging agreement. Ex. A, Plea Agreement at 17.

When the Court inquired whether the factual basis described what Marifat did, Marifat responded under oath, "Yes, Your Honor." Najafi Decl. ¶ 4, Ex. B (Transcript of Change of Plea Hearing) at 15:13–17:28. The Court then asked whether Marifat accepted the factual basis appended to his plea agreement as a factual basis for his guilty plea. Again, Marifat stated, "Yes, I do, Your Honor." *Id.* at 18:1–18:3. During his Rule 11 hearing, Marifat confirmed that he entered into the plea agreement "freely and voluntarily with the advice of [his] attorneys," and Marifat's attorney confirmed that he discussed the plea agreement with Marifat. *Id.* at 5:27–6:26.

On September 11, 2016, Marifat filed a motion to withdraw his plea. The Court granted Marifat's motion, concluding that the failure to specifically advise Marifat of certain rights—his right to testify, present evidence, and compel attendance of witnesses—presented a "fair and just" reason to permit Marifat to withdraw his guilty plea. Najafi Decl. ¶ 5, Ex. C at 2–3 (Order Granting Motion to Withdraw). The Court later opined that its decision to permit Marifat to withdraw was "a question [of] whether the Court dotted the I's and crossed the T's," but that the guilty plea was in the Court's view

---

[2] Marifat also pleaded guilty to conspiracy to commit mail fraud. That guilty plea was withdrawn along with his bid-rigging guilty plea. He is not facing any mail-fraud charges.

"knowing and voluntary." Najafi Decl. ¶ 6, Ex. D (Transcript of Pretrial Motions Hearing) at 16:2–5, 12–16.

After Marifat withdrew his guilty plea, the Court granted Marifat's motion to dismiss the information. On October 19, 2017, a grand jury indicted Marifat on one count of bid rigging. On August 2, 2018, Marifat filed a Petition for Writ of Mandamus in the Ninth Circuit challenging the Court's Order denying his motion to dismiss based on the statute of limitations.[3] Trial is scheduled for October 2, 2018.

## ARGUMENT

Marifat's statements at his plea hearing and at interviews with the government are admissible evidence. In his plea agreement, Marifat agreed to the admissibility of those statements and waived any right to suppress them. Courts assess such waivers based on principles of contract law, *United States v. Chiu*, 109 F. 3d 624, 625 (9th Cir. 1997), evaluating the scope of a waiver through a "natural reading, which leaves the parties in control through their choice of language." *United States v. Krilich*, 159 F.3d 1020, 1025 (7th Cir. 1998). Here, Marifat signed a waiver in his plea agreement that provides that all of his statements—whether made during interviews or at his Rule 11 hearing—are admissible at trial without limitation. Accordingly, Marifat's plea-hearing statements, the factual basis contained in his plea agreement, and his statements during pre-plea interviews may be introduced in the government's case-in-chief.

Although evidence of statements made during a Rule 11 hearing or during plea negotiations is not admissible in a criminal trial, Fed. R. Evid. 410(a)(3) – (4), those protections "are subject to waiver by voluntary agreement of the parties." *United States v. Mezzanatto*, 513 U.S. 196, 203 (1998). Such waivers are enforceable unless the defendant shows the waiver was unknowing or involuntary. *Id.* at 210. In his plea agreement, Marifat knowingly and voluntarily waived the evidentiary protections that preclude admitting his plea-hearing statements and the statements he made during interviews with the government prior to his plea agreement. That waiver remains valid despite Marifat's withdrawal of his guilty plea.

---

[3] Marifat's petition for mandamus is pending, and the Ninth Circuit has not requested that the government file a response.

**A. Marifat Has Waived Inadmissibility of His Statements at His Plea Hearing and in Interviews with the Government.**

1. <u>The waiver applies to Marifat's statements at his Rule 11 hearing and in his plea agreement.</u>

The waiver in Marifat's plea agreement provides that if he withdrew his plea, "any testimony given by the defendant before a grand jury or other tribunal" would be admissible against him. Ex. A, Plea Agreement at 6. Thus, by the waiver's own terms, the waiver applies to the testimony Marifat gave during his Rule 11 hearing, in which he adopted the factual basis contained in his plea agreement.[4]

Just as a defendant may waive the protections afforded to statements made in plea negotiations, so too may a defendant waive protections afforded to statements made at a Rule 11 proceeding. *See, e.g.*, *United States v. Jim*, 786 F.3d 802 809 (10th Cir. 2015) (admitting statements made during the Rule 11 hearing); *United States v. Burch*, 156 F.3d 1315, 1321 (D.C. Cir. 1998) (same). The applicability and scope of the "waiver is demonstrated by the express language of the plea agreement." *United States v. Lo*, 839 F.3d 777, 784 (9th Cir. 2016) (evaluating an appellate waiver). Here, the Rule 410 waiver in Marifat's plea agreement is triggered "if the defendant successfully moves to withdraw his plea" and pertains to "any testimony given by the defendant." Ex. A, Plea Agreement at 6.

The fact that Marifat's waiver was made in his plea agreement, as opposed to a proffer agreement in anticipation of plea negotiations as in *Mezzanatto*, does not affect the analysis. Courts of appeals have enforced Rule 410 waivers in plea agreements even when the defendant never entered a guilty plea. *E.g.*, *United States v. Nelson*, 732 F.3d 504, 512–13, 516–17 (5th Cir. 2013) (admitting stipulated factual basis for guilty plea contained in the plea agreement); *United States v. Washburn*, 728 F.3d 775, 780–92 (8th Cir. 2013) (same).

Moreover, the Rule 410 waiver in Marifat's plea agreement is not invalidated when he withdrew his guilty plea. Appellate courts have enforced Rule 410 waivers when the defendant was permitted to withdraw his guilty plea after it had been accepted. *E.g.*, *Jim*, 786 F.3d at 809; *Burch*, 156 F.3d at 1321.
//

---

[4] Although recited by the prosecutor, the factual basis in the plea agreement is not hearsay when offered against Marifat. Marifat adopted the factual basis contained in his plea agreement when he affirmed that he accepted it as a basis for his guilty plea. Fed. R. Evid. 801(d)(2)(B) (statement offered against an opposing party is not hearsay if "the party manifested that it adopted or believed it to be true").

In his petition for a writ of mandamus, Marifat contends that once he withdrew his guilty plea, his plea agreement became unenforceable in its entirety. But none of the cases Marifat cites in his petition establish that a Rule 410 waiver is unenforceable by virtue of a defendant's breach of a plea agreement or successful withdrawal of a guilty plea.

Many of the cases Marifat cites establish only that *the government* is no longer bound by the terms of a plea agreement if the defendant breaches the agreement. *See Fox v. Johnson*, 832 F.3d 978, 987 (9th Cir. 2016); *United States v. Burdeau*, 168 F.3d 352, 358 (9th Cir. 1999); *United States v. Jones*, 469 F.3d 563, 566 (6th Cir. 2006). Those cases do not hold that *a defendant* is no longer bound by a Rule 410 waiver if he breaches his plea agreement. Indeed, the *Jones* Court held exactly the opposite, finding that the defendant who breached his plea agreement could not challenge the introduction of a statement made to the government because "the agreement itself allowed the government to use the statement against Jones if he violated the terms of the agreement." *Jones*, 469 F.3d at 567.[5] Thus, the Rule 410 waiver in Marifat's plea agreement is enforceable, and his statements at his plea hearing and in his plea agreement are admissible.[6]

    2.   The waiver applies to statements Marifat made at pre-plea interviews with the government.

The Rule 410 waiver in Marifat's plea agreement also applies to statements he made at government interviews before entering that agreement. Before Marifat pleaded guilty, the government interviewed him pursuant to a proffer agreement in which Marifat agreed that his statements could be used to rebut any contradictory arguments he made or evidence he introduced at trial. Ex. E, Proffer Agreement at 1. That agreement, however, was superseded by the subsequent plea agreement, which stated that, apart from the plea agreement, "no agreement, understanding, promise, or condition between the government and the defendant exists." Ex. A, Plea Agreement at 14.

//
//

---

[5] The remaining cases Marifat cites in his mandamus petition establish only that in some instances, a defendant may be entitled to specific performance of a plea agreement upon breach by the government. *See United States v. Partida-Parra*, 859 F.2d 629, 635 (9th Cir. 1988); *cf. Kernan v. Cuero,* 138 S. Ct. 4, 9 (2017) (requiring specific performance of a plea agreement is not clearly established federal law). Those cases are inapposite here.

[6] The government seeks to admit Marifat's statements affirming the factual basis for his guilty plea. The government does not intend to admit in its case-in-chief the fact that Marifat previously pleaded guilty.

Marifat's plea agreement states that it was the only agreement, understanding, or promise between Marifat and the government, and that "all statements made by the defendant" were admissible at trial in the event he withdrew his guilty plea. Ex. A, Plea Agreement at 6. That agreement supersedes all prior proffer agreements. A "plea agreement that does not incorporate the terms of a proffer agreement supersedes the proffer agreement and renders its terms void." *United States v. Quesada*, 607 F.3d 1128, 1132 (6th Cir. 2010). Marifat's interviews pursuant to the proffer agreement were the only statements Marifat made before entering his plea agreement. Thus, upon Marifat's withdrawal of his guilty plea, the Rule 410 waiver in the plea agreement superseded the more limited protections provided by the proffer agreement. *See United States v. Fagge*, 101 F.3d 232, 234 (2d Cir. 1996) (plea agreement stating no other promises, agreements, or understandings between the government and the defendant superseded the earlier proffer agreement limiting the use of the defendant's statements at sentencing).

Because Marifat's plea agreement superseded his earlier proffer agreement, the government may introduce Marifat's statements from his pre-plea interviews. Even if the Court were to determine that the Rule 410 waiver contained in his plea agreement is unenforceable, or otherwise did not supersede the proffer agreement, the terms of Marifat's proffer agreement would, however, remain binding. Under the terms of the proffer agreement, the government would be permitted to introduce the statements Marifat made during his interviews with the government in order to impeach or rebut any evidence or arguments offered by the defendant at trial. These statements could be introduced to rebut arguments and evidence regardless of whether Marifat elected to testify in his own defense. *See United States v. Rebbe*, 314 F.3d 402, 404 (9th Cir. 2002).

**B. Marifat's Waiver Allows the Government to Introduce Marifat's Statements in its Case-in-chief.**

The waiver in Marifat's plea agreement provides that if he successfully withdraws his plea, his statements "shall be admissible in evidence in any criminal . . . proceeding hereafter brought against the defendant." Ex. A, Plea Agreement at 6. Thus, the government may introduce Marifat's statements in its case-in-chief. *See Mezzanatto*, 513 U.S. at 805 (cautioning against placing "arbitrary limits on [the parties'] bargaining chips" during plea negotiations).

//

The Ninth Circuit has enforced a Rule 410 waiver as agreed to by the defendant. *Rebbe*, 314 F.3d at 408. In *United States v. Rebbe*, the defendant engaged in plea negotiations with the government and signed a waiver that permitted the government to introduce statements made during plea negotiations to "rebut any evidence, argument, or representations" made by the defendant at trial. *Id.* at 404. At trial, without testifying, the defendant presented a defense inconsistent with the prior statements he made during plea negotiations, and the government introduced the defendant's prior statements in rebuttal. *Id.* The Ninth Circuit upheld the validity of the waiver and permitted the government to use the defendant's statements to rebut arguments he advanced at trial, noting that regardless of whether the defendant testifies, Rule 410 waivers "assist in promoting the truth-seeking function of trials." *Id.* at 407. Here, like the defendant in *Rebbe*, Marifat has waived protections of Rule 410. However, the waiver in Marifat's plea agreement is not limited to introducing statements for purposes of rebuttal or impeachment, but rather provides that all of his statements and testimony "shall be admissible in evidence." Ex. A, Plea Agreement at 6.

Every Circuit that has considered waivers permitting the government to use statements in its case-in-chief has found them to be enforceable. *Burch*, 156 F.3d at 1321 (*Mezzanatto* does not create any distinction "between permitting waivers for the purposes of impeachment or rebuttal and permitting waivers for the prosecution's case-in-chief"); *United States v. Mitchell*, 633 F.3d 997, 1004 (10th Cir. 2011) ("We see no analytical distinction between Rule 410's application to impeachment waivers and case-in-chief waivers."); *United States v. Sylvester*, 583 F.3d 285, 291 (5th Cir. 2009) ("[I]f objection can be waived for impeachment use, it can be waived for use as affirmative evidence."), *quoting Mezzanatto,* 513 U.S. at 217 (Souter, J., and Stevens, J., dissenting); *Washburn*, 728 F.3d at 789 (Rule 410 waiver entitled government to offer signed factual stipulation contained in the plea agreement as evidence in its case-in-chief). Likewise, in *Petrosian v. United States*, 661 Fed. Appx. 903, 904 (9th Cir. 2016) (unpublished), the Ninth Circuit held that defense counsel was not deficient for failing to seek a mistrial after the government admitted the defendant's proffer statements in its case-in-chief pursuant to a waiver, noting that "[n]o Ninth Circuit or Supreme Court precedent . . . prohibited introduction" of statements made during plea negotiations that were subject to a Rule 410 waiver. Therefore, because

//

Marifat waived any protections applicable to the statements he made at his change of plea hearing, as well as the statements he made during government interviews, the government may introduce those statements in its case-in-chief.

### C. Marifat's Waiver Was Knowing and Voluntary and is Therefore Valid.

Marifat cannot invalidate his Rule 410 waiver because that waiver was knowing and voluntary, and was not the product of fraud or coercion. *See Mezzanatto*, 513 U.S. at 210. When evaluating whether a waiver in a plea agreement was knowing and voluntary, courts look "to the circumstances surrounding the signing and entry of the plea agreement." *Lo*, 839 F.3d at 783 (evaluating an appellate waiver); *Washburn*, 728 F.3d at 781 (evaluating a waiver of protections under Rule 410). Here, the Rule 410 waiver is contained in Marifat's plea agreement, which also contains a provision in which Marifat affirmed that he "read [his] Plea and Cooperation Agreement and carefully reviewed every part of it with [his] attorney." Ex. A, Plea Agreement at 15. Moreover, at his change of plea hearing, Marifat confirmed that he entered into the plea agreement "freely and voluntarily with the advice of [his] attorneys." Ex. B, Transcript of Change of Plea Hearing at 15:7–10. In sum, Marifat was represented by counsel at the time he entered his plea agreement, the plea agreement indicates that Marifat read and understood its terms, and Marifat affirmed he entered the plea agreement voluntarily at his plea hearing. Nothing in the record rebuts these declarations.

Rule 11 does not require that the Court expressly inform Marifat that his plea agreement contained a Rule 410 waiver. *Cf.* Fed. R. Crim. P. 11(b)(1)(N). While Rule 11 requires the district court to inform the defendant of any terms in a plea agreement waiving the defendant's right to appeal his sentence, before that requirement was added to Rule 11, the Ninth Circuit repeatedly held that a district court need not inform the defendant of the terms of an appeal waiver. *See Lo*, 839 F.3d at 784, n. 1. Accordingly, a waiver contained within a plea agreement is valid even if the defendant is not expressly advised of the waiver by the court, so long as Rule 11 does not require such an advisement. *See id.* Indeed, defendants frequently waive the protections of Rule 410 as a precondition to entering plea negotiations without any advisements from the court whatsoever. *See, e.g.*, *Mezzanatto*, 513 U.S. at 198. Therefore, a waiver is valid where, as here, the defendant "signed the plea agreement . . . which

//

included both a waiver provision and a provision stating that he had read the plea agreement, understood its terms and conditions, and had discussed those matters with his attorney," and "[n]othing in the record rebuts these declarations." *United States v. Michlin*, 34 F.3d 896, 899 (9th Cir. 1994) (upholding appellate waiver in plea agreement under previous version of Rule 11).

That Marifat was allowed to withdraw his plea does not mean that the plea agreement or statements covered by the Rule 410 waiver were unknowing or involuntary. *See Jim*, 786 F.3d at 809. A knowing and voluntary waiver contained in a plea agreement remains valid even after a defendant withdraws his guilty plea for a "fair and just reason." *Id.* The Court permitted Marifat to withdraw his guilty plea because the Court had failed to advise Marifat of all of his enumerated rights under Rule 11. But even though the omissions at the plea colloquy were a "fair and just" basis to withdraw his plea, Marifat's guilty plea was, in the view of the Court, "knowing and voluntary." Ex. D, Transcript of Pretrial Motions Hearing at 16:2–16. So too, in his plea agreement, Marifat knowingly and voluntarily waived the plea-statement protections.

Moreover, "the clearly contemplated situation where the Rule 410 waiver would have any usefulness to the Government is in precisely this situation—where the defendant failed to carry out his side of the bargain to plead guilty and thereby forced the Government to trial." *Jim*, 786 F.3d at 809. Likewise, here Marifat's Rule 410 waiver expressly contemplates operation of the waiver "if the defendant successfully moves to withdraw his plea." Ex. A, Plea Agreement at 6. A holding that the waiver's predicate condition—successful withdrawal of a guilty plea—itself negates the waiver would eliminate the government's benefit of the bargain.

## CONCLUSION

Marifat admitted to bid rigging under oath at his plea hearing and during pre-plea interviews with the government. As part of his plea agreement, he waived the protections of Federal Rule of Evidence 410 in the event he later withdrew his guilty plea. Marifat's waiver was knowing and voluntary and thus is enforceable. It does not limit how the government chooses to use Marifat's admissions at trial. Accordingly, the government respectfully requests the Court grant its motion to

//

//

admit Marifat's admissions at trial, including the plea agreement's factual basis and admissions he made during his Rule 11 hearing, as well as the statements he made during interviews prior to his plea hearing.

Respectfully submitted,

DATE: September 4, 2018

/s/
ANDREW MAST
JENNIFER HANE
ARSHIA NAJAFI
Trial Attorneys
Antitrust Division
United States Department of Justice