1  DAVID J. COHEN, ESQ.
   California Bar No. 145748
2  ALEXANDER P. GUILMARTIN, ESQ.
   California Bar No. 306787
3  **BAY AREA CRIMINAL LAWYERS, PC**
4  300 Montgomery Street, Suite 660
   San Francisco, CA 94104
5  Telephone: (415) 398-3900

6
   Attorneys for Defendant **Yama Marifat**
7
                UNITED STATES DISTRICT COURT
8
                EASTERN DISTRICT OF CALIFORNIA
9

10

11 | UNITED STATES OF AMERICA, | Case No. 2:17-CR-00189 WBS |
   | | |
12 | Plaintiff, | **MR. MARIFAT'S OPPOSITION TO** |
   | | **MOTION TO ADMIT DEFENDANT'S** |
13 | v. | **STATEMENTS** |
14 | YAMA MARIFAT, | Date: September 24, 2018 |
   | | Time: 9:00 a.m. |
15 | Defendant. | Ctrm: 5 |

16

17
                        **I.**
18
                   **INTRODUCTION**
19

20     In its motion to admit statements made by Mr. Marifat both pursuant to a proffer

21 agreement and during his plea colloquy with the court, the government makes three basic

22 arguments: (1) the waiver provision in the rescinded plea agreement renders Mr. Marifat's

23 statements admissible; (2) the terms of the proffer agreement do not apply because they have

24 been superseded and replaced by those of the plea agreement; and (3) even if the proffer

25 agreement's limitation on the use of Mr. Marifat's statements in its case-in-chief applies, the

26

27 government will be able to use those statements for rebuttal purposes. Although the

28 government is correct that the terms of the proffer agreement permit the use of Mr. Marifat's

Mr. Marifat's Opposition to Motion to Admit Defendant's Statements
*U.S. v. Marifat;*
Case No. 2:17-CR-00189 WBS

1
2
3
4

proffer statements (but not statements made during the plea colloquy) in rebuttal, it overstates

the application of that exception. As to the other two arguments, the government is wholly

incorrect, and it plainly may not use Mr. Marifat's statements in its case-in-chief.[1]

5
6

**II.**

**THE RESCINDED PLEA AGREEMENT IS UNENFORCEABLE.**

7
8

**A.      The Plea Agreement Was Voided by the Court's Granting of Mr. Marifat's Motion to Withdraw his Plea.**

9
10
11
12
13
14
15
16
17
18
19
20
21

The plea agreement in this case was finally and absolutely rescinded the moment this

court granted Mr. Marifat's motion to withdraw his plea. The government contends, to the

contrary, that it remains enforceable against Mr. Marifat and that its terms should govern trial

proceedings. The government appears to know its contention is not one that has ever been

recognized by the Ninth Circuit, a Court that has expressly refused to decide even whether an

agreement to waive Fed. R. Evid. 402's prohibition on the use of a defendant's statements in

the government's case-in-chief can *ever* be enforceable. *See United States v. Rebbe*, 314 F.3d

402, 406-08 (9th Cir. 2002). The government forges ahead nonetheless, in reliance on out-of-

Circuit and inapposite case law. This court need not, and should not, abide. Rather, it should

rule on the basis of the fundamental and oft-repeated tenets of rescinded plea agreements and

refuse to enforce the one (and the waiver contained therein) in this case.

22
23
24
25
26
27

The Supreme Court has long decried the admission as evidence at trial of a defendant's

withdrawn guilty plea; a court permitting the withdrawal of a plea implicitly declares that the

plea should "be held for naught." *Kercheval v. United States*, 274 U.S. 220, 224 (1927). It

addressed the specific issue of Rule 410 waivers in *United States v. Mezzanatto*, 513 U.S. 196

(1995). However, the Court in *Mezzanatto* dealt not with the application of such waivers in

28

---

[1] This includes, contrary to its stated intentions, in the government's opening statement.

Mr. Marifat's Opposition to Motion to Admit Defendant's Statements
*U.S. v. Marifat;*
Case No. 2:17-CR-00189 WBS

2

rescinded plea agreements, but merely with the question of whether a defendant could waive rights afforded by Rule 410 *at all*. In that case, the defendant entered into negotiations regarding a potential cooperation agreement and waived his right to challenge the government's use of his statements in those negotiations for impeachment purposes. *Id*. at 198-199. Responding to the Ninth Circuit's holding that a defendant could never enter into such a waiver, the Supreme Court ruled that such a waiver may be validly executed, particularly because "[t]he admission of plea statements for impeachment purposes *enhances* the truth-seeking function of trials and will result in more accurate verdicts." *Id*. at 205 (emphasis original). A separate concurring opinion by Justice Ginsburg, and joined in by two other Justices, was careful to note that the Court's ruling did not extend beyond the confines of the waiver in that case, cautioning that:

> The Court holds that a waiver allowing the Government to impeach with statements made during plea negotiations is compatible with Congress' intent to promote plea bargaining. It may be, however, that a waiver to use such statements in the case in chief would more severely undermine a defendant's incentive to negotiate, and thereby inhibit plea bargaining.

*Id*. at 211 (Ginsburg, J., concurring).[2]

The Ninth Circuit has since declined to resolve the broader question left unanswered in *Mezzanatto*. In *United States v. Rebbe*, 314 F.3d 402, 406 (9th Cir. 2002), the Court specifically recognized Justice Ginsburg's *Mezzanatto* concern:

> Although we recognize that in *Mezzanatto*, Justice Ginsburg's concurring opinion, joined by Justice O'Connor and Justice Breyer, expressed serious doubt and concern as to whether such waivers are enforceable in cases where the Government seeks to admit a defendant's proffer statements in its case-in-chief, those facts are not presently before us. . . . [W]e decline to address the larger issue of whether this or any other waiver, permitting the Government to use a

---

[2] Justices Souter and Stevens, dissenting, argued that even a waiver of the prohibition on the use of statements for impeachment purposes was unenforceable. Thus, a majority of the Court's judges expressed their discomfort with enforcing a waiver of Rule 410 for the government's case-in-chief.

Mr. Marifat's Opposition to Motion to Admit Defendant's Statements
*U.S. v. Marifat;*
Case No. 2:17-CR-00189 WBS

1
2

defendant's proffer statements in its case-in-chief, is enforceable under the
Federal Rules.

3

No Ninth Circuit case since *Rebbe* has elected to fill this gap in precedent.

4

Nonetheless, the government cites a handful of out-of-Circuit cases for its argument that

5

this court should be the first in this Circuit to extend the enforceability of a Rule 410 waiver:

6

*United States v. Burch*, 156 F.3d 1315 (D.C. Cir. 1998); *United States v. Nelson*, 732 F.3d 504

7

(5th Cir. 2013); *United States v. Sylvester*, 583 F.3d 285 (5th Cir. 2009); *United States v.*

8

*Washburn*, 728 F.3d 775 (8th Cir. 2013); *United States v. Mitchell*, 633 F.3d 997 (10th Cir.

9

2011); and *United States v. Jim*, 786 F.3d 802 (10th Cir. 2015). Each of these cases is factually

10

and procedurally distinguishable, in addition to nonbinding.

11

In *Burch*, the Rule 410 waiver was not only signed by the defendant in his written plea

12
13

agreement, but also specifically reiterated and agreed to during the oral plea colloquy, making

14

abundantly clear to the defendant and everyone else what would transpire if he chose to

15

withdraw his plea. In all three of *Nelson*, *Sylvester*, and *Washburn*, the defendant signed a plea

16

agreement that included a Rule 410 waiver and a stipulated factual basis, but ultimately never

17

entered a guilty plea; the reviewing courts found no abuse of discretion in the trial court's later

18
19

admission of the factual basis statement at trial. Mr. Marifat, of course, did not fail to uphold

20

his end of the plea agreement by refusing to plead, but rather withdrew his plea at a later date

21

pursuant to an inadequate plea colloquy that failed to demonstrate the required voluntariness of

22

his plea.

23

The Court in *Mitchell* rested its holding on the fact that the defendant there entered his

24
25

waiver only at the conclusion of plea negotiations and pursuant to agreed consideration, rather

26

than at the outset of his proffer; Mr. Marifat, of course, entered into his original proffer

27

agreement regarding the use of his statements before he knew what offer the government would

28

Mr. Marifat's Opposition to Motion to Admit Defendant's Statements
*U.S. v. Marifat;*
Case No. 2:17-CR-00189 WBS

4

1
2
3
4
5

extend to him. And the Tenth Circuit's language suggesting that a Rule 410 waiver in a plea agreement remains enforceable even after a withdrawal of plea in *Jim* was mere dicta, as the Court's holding there ultimately addressed only the defendant's contention that his entire plea agreement was not knowingly or voluntarily executed.

6
7
8
9
10
11
12
13
14
15
16
17
18
19

The government has provided no principled reason for this court to extend the holding of *Mezzanatto* to the sort of waiver at issue here, and certainly not to rule that such a waiver remains enforceable even after the agreement of which it is a part has been rescinded. As at least one district court has explained, "it certainly is not clear whether a majority of the Supreme Court would uphold the type of waiver at issue here, one that is not limited to impeachment purposes." *United States v. Fronk*, 173 F.R.D. 59, 70 n.10 (W.D.N.Y. 1997). The First Circuit has expressly refused to enforce a Rule 410 waiver from a plea agreement following the defendant's withdrawal of his plea, saying that "[t]he government's underlying quarrel is [actually] with the court's decision to allow defendant's motion to withdraw the plea." *United States v. Newbert*, 504 F.3d 180, 188 (1st Cir. 2007); *see also United States v. Kowalewski*, 2014 U.S. Dist. LEXIS 165404, at *23-25 (N.D. Ga. Oct. 7, 2014) [terms of plea agreement enforceable only while the court is in acceptance of the agreement and plea].

20
21
22
23
24
25
26
27
28

Indeed, the concern expressed in Justice Ginsburg's concurrence in *Mezzanatto* is well-founded, as some protections are so fundamental that their establishment of a guarantee to fair procedure must be preserved. *Mezzanatto*, *supra*, 513 U.S. at 204. "In deciding whether to enforce an individual's waiver of a right, courts ask whether the right implicates institutional and societal values that transcend the individual's interests." *United States v. Ready*, 82 F.3d 551, 555 (2d Cir. 1996). If this court enforces the Rule 410 waiver in Mr. Marifat's plea agreement, it will almost certainly discourage future plea bargaining in this Circuit by making

Mr. Marifat's Opposition to Motion to Admit Defendant's Statements
*U.S. v. Marifat;*
Case No. 2:17-CR-00189 WBS

the price of a withdrawn plea too high for any defendant to bear. Because the entrance of a guilty plea pursuant to a negotiated plea agreement necessarily involves an admission of guilt and a factual basis, every defendant considering the withdrawal of their plea will know that doing so will result in admissible evidence of a confession. The risk of entering a plea, even unknowingly or involuntarily, will be immense. The government, which holds "awesome advantages in bargaining power" (*Id.* at 559), will be able to force defendants to choose between entering a plea to which they will essentially be forever bound, or refusing to cooperate whatsoever. On the other hand, refusing to enforce the Rule 410 waiver included in a rescinded plea agreement works no undue harm on the government, but merely returns the parties to the same position they were in before the agreement was signed.

The government summarily dismisses of the many Ninth Circuit cases holding that a withdrawal of plea operates to nullify the plea agreement, rescinding its terms and rendering it unenforceable. It argues that those cases voiding plea agreements dealt with defendants' attempts to enforce the agreement against the government. In effect, the government makes the unjust argument that a rescinded plea agreement remains enforceable against a defendant but *not* against the government. According to the government, the defendant remains bound by whatever terms of the agreement the government elects to pursue, while the defendant receives none of the terms for which he bargained. Apart from being patently unfair, such an interpretation of law ignores the Ninth Circuit precedent that directly contradicts this reading. In *United States v. Partida-Parra*, 859 F.2d 629, 634 n.6 (9th Cir. 1988), for example, the Court was explicit: "When the district court exercises its power under the Federal Rules to reject a plea agreement or permit a defendant to withdraw his plea, it is clear by implication

1    that the **parties** are consequently released from their obligations under the plea agreement"

2    (emphasis added).

3           So too has the Ninth Circuit addressed the general circumstance, applicable in this case,

4    where the government seeks to enforce the terms of a plea agreement following an inadequate

5    

6    plea colloquy. In *United States v. Portillo-Cano*, 192 F.3d 1246 (9th Cir. 1999), the defendant

7    entered into a plea agreement that purported to waive his right to appeal his conviction.

8    Subsequently, the defendant appealed his conviction and sentence, claiming that the waiver in

9    

10   the plea agreement was unenforceable due to the district court's failure to comply with Fed. R.

11   Crim. P. 11 by failing to explain to the defendant the nature of the charges during the plea

12   colloquy. *Id.* at 1249. The Court held that waivers contained in a plea agreement must "stand or

13   fall with the agreement of which they are a part." *Id.* at 1250 (*quoting United States v. Wenger*,

14   58 F.3d 280, 282 (7th Cir. 1995).) "If the agreement is voluntary, and taken in compliance

15   

16   with Rule 11, then the waiver of appeal must be honored. If the agreement is involuntary or

17   otherwise unenforceable, then the defendant is entitled to appeal." *Ibid.*; *see also United States*

18   *v. Pena*, 314 F.3d 1152, 1154 n.1 (9th Cir. 2003) (plea agreement unenforceable due to failure

19   to comply with Rule 11); *United States v. Bibler*, 495 F.3d 621, 624 (9th Cir. 2007) (appellate

20   waivers in a plea agreements unenforceable where plea not taken in accordance with Rule 11).

21           *Portillo-Cano* distinguished cases upholding a waiver contained in the plea agreement

22   in situations where the challenge did not implicate the voluntariness of the

23   defendant's plea from situations where "compliance with the procedural requirements

24   of Rule 11(c) was at issue." *Id.* at 1250. The Court stated that a challenge to the sufficiency of

25   the plea colloquy under Rule 11 goes to the heart of whether the defendant's guilty plea,

26   including the waiver contained in the plea agreement, is enforceable. *Ibid*. Thus, the Court

27   

28

found it necessary to determine whether the plea was invalid under Rule 11 in order to determine if the waiver contained within the plea agreement was similarly invalid. *Ibid*. In *Portillo-Cano*, the district court's failure to describe the nature of the charges did not conform to the requirements of Rule 11, and, therefore, the plea agreement was unenforceable and did not waive the defendant's right to appeal. *Id*. at 1252. The Court, therefore, concluded that a waiver contained within a plea agreement is necessarily unenforceable where the plea is not taken in conformity with the mandates of Rule 11.

In the present case, Mr. Marifat's plea agreement included a term regarding the admission of his statements in future proceedings. But when this court permitted Mr. Marifat to withdraw his plea on the basis of an inadequate Rule 11 colloquy, the agreement, and all of its terms, became invalidated. This included the term which the government presently seeks to enforce, one that is no longer in effect. The government should not be permitted to enforce an unenforceable term, and a plea agreement which is no longer valid should be deemed to remain in effect as Mr. Marifat proceeds to trial. Whether a waiver of a defendant's right to protect against the use of his statements in the government's case-in-chief pursuant to Fed. R. Evid. 410 can *ever* be enforced remains an open question in this Circuit, and the government's proposed answer raises profoundly concerning implications. Ultimately, this court need only determine that by withdrawing Mr. Marifat's plea, it effectively voided the plea agreement and rendered it unenforceable.

**B.**   **<u>Mr. Marifat Did not Knowingly and Voluntarily Waive his Protections Against the Use of his Statements in the Event his Plea Was Withdrawn.</u>**

Regardless of the presumed enforceability of Mr. Marifat's plea agreement, the waiver of the protections afforded by Fed. R. Evid. 410 that the government claims Mr. Marifat made was not knowingly and voluntarily executed. As such, it cannot be enforced against him.

In order for a defendant to knowingly waive a right otherwise afforded to him, he must do so "with a full awareness of both the nature of the right being abandoned *and* the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (emphasis added). That is, a waiver may only be enforced where the record demonstrates "an intentional relinquishment or abandonment of a known right." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). "In deciding whether a waiver meets this constitutional requirement, 'courts indulge in every reasonable presumption against waiver.' Brewer v. Williams, 430 U.S. 387, 404, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977)." *Kirkpatrick v. Chappell*, 872 F.3d 1047, 1056 (9th Cir. 2017). This stringent standard applicable to waivers of rights essential to a fair trial also applies to plea agreement waivers of the protections of Rule 410. *Mezzanatto*, *supra*, 513 U.S. at 210.

Whether or not the government intended the provision of the plea agreement at issue here to permit them to use Mr. Marifat's proffer and plea colloquy statements against him at trial, Mr. Marifat clearly did not interpret the agreement in that manner (or else the decision to withdraw his plea would seem unwise). In deciding whether to enforce the term of the agreement, and the government's interpretation thereof, this court must look to what Mr. Marifat "reasonably understood to be the terms of the agreement when he pleaded guilty." *United States v. De La Fuente*, 8 F.3d 1333, 1337 (9th Cir. 1993); *see also United States v. Charles*, 581 F.3d 927, 931 (9th Cir. 2009); *United States v. Cope*, 527 F.3d 944, 950 (9th Cir. 2008). Put more explicitly:

> If . . . a term of a plea agreement is not clear on its face, we look to the facts of the case to determine what the parties reasonably understood to be the terms of the agreement. If, after we have examined the extrinsic evidence, we still find ambiguity regarding what the parties reasonably understood to be the terms of the agreement, then the government ordinarily must bear responsibility for any lack of clarity.

Mr. Marifat's Opposition to Motion to Admit Defendant's Statements
*U.S. v. Marifat;*
Case No. 2:17-CR-00189 WBS

*United States v. Clark*, 218 F.3d 1092, 1095 (9th Cir. 2000).

The government's recently raised and rarely pursued claim that it may use against Mr. Marifat the statements he offered to it pursuant to his plea negotiations is not supported by the law and cannot have reasonably been expected to be presented. Although the government argues that the Rule 410 waiver in the plea agreement *must* have been clearly intended to apply to the circumstances at issue here, that is not necessarily the case; there are a number of other situations where the government might have sought the introduction of Mr. Marifat's statements, such as for impeachment purposes. At no point was Mr. Marifat informed by his counsel, the court, or the government that in the event he withdrew his plea, he would face at trial the admission of his own statements as evidence against him. No party explained the parameters of his waiver as the government interpreted them, nor did any part explain the circumstances in which the government believes it applies. At best, the provision of the plea agreement which the government now seeks to enforce in its novel manner was, generously speaking, ambiguous. This ambiguity cannot now be resolved against Mr. Marifat and used to make admissible against him his statements in violation of Fed. R. Evid. 410.

### III.

### THE PROFFER AGREEMENT HAS NOT BEEN SUPERSEDED AND REMAINS IN EFFECT.

Even if Mr. Marifat's plea agreement had not been rescinded, the proffer agreement signed by the parties would remain in effect, and its terms would apply to the statements Mr. Marifat made on June 24, June 25, August 6, and September 13, 2010. The government argues that the plea agreement, which made no mention of the earlier proffer agreement nor the statements Mr. Marifat made pursuant to his proffer, acted to supersede the proffer agreement and rendered its terms void. Because this issue is the basis for Mr. Marifat's motion for an

Mr. Marifat's Opposition to Motion to Admit Defendant's Statements
*U.S. v. Marifat;*
Case No. 2:17-CR-00189 WBS

order compelling specific performance of the proffer agreement (doc. no. 58), Mr. Marifat does

not repeat his arguments at length here. He notes, however, that on this point, the government

once again relies on out-of-Circuit and inapposite caw law to substantiate its position. Both

cases cited by the government – *United States v. Quesada*, 607 F.3d 1128 (6th Cir. 2010) and

*United States v. Fagge*, 101 F.3d 232 (2d Cir. 1996) – enforced plea agreements from which

the defendant *had not withdrawn*. Thus, there was no question about the continued validity of

the agreements, and to the extent they conflicted with the terms of the proffer agreements, the

plea agreements took priority. That is not the case here, where the government seeks to not only

enforce against Mr. Marifat a plea agreement that is no longer valid, but to give that invalid

agreement precedence over an earlier proffer agreement. No law dictates such a holding.

## IV.

### THE GOVERNMENT OVERSTATES ITS ABILITY TO USE MR. MARIFAT'S STATEMENTS IN REBUTTAL.

Perhaps foreseeing the futility of its position, the government argues that even if the

Rule 410 waiver in the plea agreement is not enforced, Mr. Marifat's statements remain subject

to admission for rebuttal purposes pursuant to the proffer agreement. While this is technically

true, the government overstates its case. Positing that Mr. Marifat's statements remain

admissible in rebuttal "regardless of whether [Mr.] Marifat elected to testify in his own

defense" (doc. no. 59, 7:19), the government implies that it will be able to admit Mr. Marifat's

statements as soon as Mr. Marifat presents any arguments in his defense. This contention has

been directly rejected by the Seventh Circuit, which refused to accept the government's

arguments that it was free to offer proffer statements in rebuttal as soon as the defendant did

anything more than cross-examine on "the credibility, weight and sufficiency of the

Mr. Marifat's Opposition to Motion to Admit Defendant's Statements
*U.S. v. Marifat;*
Case No. 2:17-CR-00189 WBS

government's evidence in ways that were extrinsic to the facts of the case." *United States v.*

*Krilich*, 159 F.3d 1020, 1025 (7th Cir. 1998). Similarly, the Second Circuit has explained:

> The mere fact that a defendant pleads not guilty and stands trial is not a factual assertion that triggers the proffer agreement waiver, and the government certainly does not contend otherwise. Nor are defense arguments that attempt to demonstrate why the facts put in evidence by the prosecution are insufficient to permit the jury to find the elements of the crime proved. Thus, a defense argument that simply challenged the sufficiency of government proof on elements such as knowledge, intent, identity, etc., would not trigger the waiver here at issue. On the other hand, a statement of fact in a defense opening, such as the statement in this case unequivocally identifying Jamal Barrow as the real perpetrator of the charged crimes, does qualify as a factual assertion within the four corners of the waiver provision. . . .

> We note, however, that such a conclusion may not be reached so easily when counsel's arguments or questions assert facts implicitly rather than directly. For example, a cross-examination question challenging a witness's perception or recollection of an event does not necessarily imply that the event did not occur, only that the witness may not have seen or reported it accurately. On the other hand, a question accusing a witness of fabricating an event, such as counsel in this case put to Det. Campana with respect to the April 19, 2001 meeting with the confidential informant, does implicitly assert that no such meeting ever took place. . . .

> We further note that even when a district court is satisfied that a factual assertion triggering a Rule 410 waiver has been made, whether directly or implicitly, that conclusion does not mandate receipt of the proffer statements in evidence. A waiver agreement between the parties does not divest a district court of its considerable discretion to exclude relevant evidence that may inject unfair prejudice or confusion into the jury's resolution of the issues in dispute. Thus a court may well view a factual assertion made by counsel at sentencing, where parties frequently proceed by proffer, differently from the same assertion made in an opening statement or a question to a trial witness. Counsels' questions and arguments at trial are not, after all, evidence, and district courts may, in appropriate cases, decide to strike a question or argument, instructing the jury to ignore the factual assertion stated or implied, rather than admit defendant's proffer statements in rebuttal. The exercise of such discretion necessarily depends on the district court's unique insights into trial dynamics and into the impact the assertions at issue have had on the jury. For example, a district court might exercise its discretion to exclude proffer statements when it concludes that a "factual assertion" was inadvertently and only briefly interjected into the proceedings, and counsel agrees not to pursue the matter further.

Mr. Marifat's Opposition to Motion to Admit Defendant's Statements
*U.S. v. Marifat;*
Case No. 2:17-CR-00189 WBS

1  *United States v. Barrow*, 400 F.3d 109, 118-19 (2d Cir. 2005) (cleaned up).[3]

2
3  Because Mr. Marifat has not yet presented any defense, the issue of the precise

4  boundaries of permissible rebuttal is not yet ripe for determination. To the extent the

5  government claims it is free to offer Mr. Marifat's statements in rebuttal without meaningful

6  limitation, it is incorrect.

7                                    Respectfully submitted,

8                              **BAY AREA CRIMINAL LAWYERS, PC**

9
   Dated: September 12, 2018        By:/s/David J. Cohen
10                                      DAVID J. COHEN, ESQ.

11                                   Attorneys for Defendant **Yama Marifat**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  [3] This brief uses "(cleaned up)" to indicate that internal quotation marks, alterations, and
    citations have been omitted from quotations. *See*, *e.g.*, *Nickler v. Cty. of Clark*, 2018 U.S. App.
27  LEXIS 22674, at *4 (9th Cir. Aug. 15, 2018); *United States v. Reyes*, 866 F.3d 316, 321 (5th
    Cir. Aug. 1, 2017); *United States v. 22,800.00 in United States Currency*, 2018 U.S. Dist.
28  LEXIS 136346, at *6 (C.D. Cal. July 25, 2018); *McMorrow v. Mondelez Int'l, Inc.*, 2018 U.S.
    Dist. LEXIS 140078, at *13 (S.D. Cal. Aug. 17, 2018).

Mr. Marifat's Opposition to Motion to Admit Defendant's Statements
*U.S. v. Marifat;*
Case No. 2:17-CR-00189 WBS