ANDREW MAST (CSBN 284070)
JENNIFER HANE (CSBN 275729)
ARSHIA NAJAFI (CSBN 311229)
Trial Attorneys
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue, Room 10-0101
San Francisco, California  94102-3478
Telephone: (415) 934-5300
andrew.mast@usdoj.gov

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                            Plaintiff,<br><br>        v.<br><br>YAMA MARIFAT,<br><br>                            Defendant. | CASE NO. 2:17-CR-0189 WBS<br><br>**UNITED STATES' REPLY IN SUPPORT OF ITS MOTION TO ADMIT DEFENDANT'S ADMISSIONS**<br><br>DATE: September 24, 2018<br>TIME: 10:00 a.m.<br>COURT: Honorable William B. Shubb |

## ARGUMENT

The statements defendant Yama Marifat made at his change of plea hearing and during pre-plea interviews with the government are admissible as evidence against him.  He voluntarily and knowingly waived the protections of Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(f) in his plea agreement.  As the plea agreement plainly states, that waiver is triggered—not invalidated—by Marifat's withdrawal of his guilty plea.  The plea agreement also states that it is the only agreement between the government and defendant, and that "all statements" and "any testimony" by Marifat would be admissible in evidence if he successfully withdrew his guilty plea—which he did.  His plea agreement superseded an earlier proffer agreement, which permitted the government to introduce

Marifat's statements from his pre-plea interviews only to impeach or rebut evidence or arguments offered by him at trial.

### A. The Waiver Remains Valid After Marifat Withdrew His Guilty Plea

Marifat's withdrawal of his guilty plea does not nullify the terms of his plea agreement. Courts assess plea agreements, and the waivers contained therein, based on principles of contract law. *United States v. Clark*, 218 F.3d 1092, 1095 (9th Cir. 2000). Nothing in the plea agreement indicates that its terms would be "rescinded," as Marifat now contends, Dkt. 65 at 2, if he withdrew his plea. Rather, it states the opposite—the waiver in Marifat's plea agreement is *contingent* on his "successfully mov[ing] to withdraw his plea." Plea Agreement at 6. Thus, Marifat's plea agreement, including the waiver provision conditioned on his withdrawal of his guilty plea, remains binding against Marifat. *See United States v. Molinaro*, 11 F.3d 853, 864 (9th Cir. 1993) (refusing to suppress statements made by the defendant because the government "expressly reserved the right to use these statements against [defendant] if he breached the plea agreement, and [defendant] breached the agreement by withdrawing his guilty plea").

The waiver became effective when Marifat signed the plea agreement. Plea Agreement at 6 ("By signing this Agreement, the defendant waives any and all rights in the foregoing respects."). That waiver was triggered six years later, when he "successfully move[d] to withdraw his plea." Plea Agreement at 6. Thus, the waiver applies and Marifat is bound by its terms. This is in contrast to the cases on which Marifat relies. In *United States v. Newbert*, 504 F.3d 180, 188 (1st Cir. 2007), the plea agreement was inadmissible because the waiver was not effective unless the defendant breached the plea agreement, and the agreement was unclear as to whether withdrawing a plea based on a claim of actual innocence, as the defendant did, constituted a breach. In *United States v. Kowaleski*, 2014 U.S. DIST LEXIS 165404, at *23-25 (N.D. Ga. Oct. 7, 2014), the plea agreement was inadmissible because the waiver did not become effective until the court accepted the defendant's guilty plea, and the defendant never entered a guilty plea.

Marifat does not cite any authority—because no such authority exists—indicating that a defendant's withdrawal of a guilty plea voids a Rule 410 waiver in a plea agreement. Instead he cites

*dicta* from a footnote in *United States v. Partida-Parra*, 859 F.2d 629, 634 n.6 (9th Cir.1988), in which the court stated that when a defendant withdraws his guilty plea, the parties are released from their obligations under the plea agreement. But in that case, the government was trying to rescind a plea agreement even though the defendant did not breach the agreement. The court held that once a guilty plea was unconditionally accepted by the court, a mistake of fact did not entitle the government to rescind the plea agreement. *Id.* at 634. The Ninth Circuit was not evaluating language in a plea agreement, much less a waiver preconditioned on the withdrawal of a guilty plea. *See id.* Indeed, in the same footnote Marifat cites, the court states that courts *do* have the power to enforce plea agreements when a party breaches the agreement. *Id.* at 634 n.6 (courts have the power to "address breached plea agreements" under common law). Thus, nothing in *Partida-Parra* suggests a defendant can nullify waivers contained in their plea agreement by withdrawing their plea, especially waivers contingent on the defendant's withdrawal.[1]

### B. The Government May Admit Marifat's Statements in its Case-in-Chief

#### 1. Case-in-Chief Waivers are Enforceable

Under Marifat's plea agreement, all of his statements and testimony "shall be admissible in evidence" in any criminal proceeding. Thus, the plain language of the waiver permits the government to introduce these statements in its case-in-chief. Marifat has identified no case in which a court concluded that case-in-chief waivers are *per se* unenforceable. Indeed, such a holding would be contrary to the rationale of the Supreme Court in *United States v. Mezzanatto*, 513 U.S. 196, 208 (1995), which instructed courts to "permit the interested parties to enter into knowing and voluntary negotiations without any arbitrary limits on their bargaining chips." Consistent with *Mezzanatto*, the Ninth Circuit has enforced Rule 410 waivers as agreed to by the defendant. *United States v. Rebbe*, 314 F.3d 402, 408 (9th Cir 2002); *see also Petrosian v.United States*, 661 Fed. Appx. 903, 904 (9th Cir. 2016)

---

[1] On August 18, 2018, the Ninth Circuit denied Marifat's petition for a writ of mandamus. In his mandamus petition, Marifat similarly argued the waiver of indictment contained in his plea agreement became void when he withdrew his guilty plea. According to Marifat, this rendered his original information invalid, and precluded the government from relying on 18 U.S.C. § 3288 to indict him after the five-year statute of limitations.

(unpublished) (counsel was not deficient for failing to object to 410 evidence introduced in the government's case-in-chief pursuant to a waiver).

Enforcing Rule 410 waivers as written will not "discourage future plea bargaining" Dkt. 65 at 5, as Marifat contends. Every circuit to have addressed this issue has enforced waivers permitting the government to introduce Rule 410 evidence in the government's case-in-chief. *See, e.g.*, *United States v. Stevens,* 455 Fed. Appx. 343, 345 (4th Cir. 2011) (unpublished); *United States v. Sylvester*, 583 F.3d 285, 288-94 (5th Cir. 2009); *United States v. Young,* 223 F.3d 905, 910-11 (8th Cir. 2000); *United States v. Mitchell,* 633 F.3d 997, 1004 (10th Cir. 2011); *United States v. Burch*, 156 F.3d 1315, 1321 (D.C. Cir. 1998). Indeed, the consensus is that enforcing Rule 410 waivers does not discourage plea bargaining, but rather enables a defendant to make "his representations more credible" during plea negotiations. *Rebbe*, 314 F.3d at 408. Thus, Marifat's concern is unfounded.[2]

Enforcing the Rule 410 waiver will ensure the government obtains the benefit of its bargain. After securing Marifat's guilty plea (and the accompanying incriminating statements) early in the investigation, the government stipulated to continue his sentencing while it pursued cases against other defendants. This provided Marifat with the opportunity to cooperate, thereby obligating the government to recommend a lower sentence if he provided substantial assistance. Plea Agreement at 7. Marifat waited more than five years to move to withdraw his plea—during which time the government was not actively investigating him because he had already pleaded guilty (and the waiver ensured that if he did withdraw his guilty plea, his statements would be admissible). Therefore, enforcing the waiver is necessary to avoid the "untoward consequences" that result from Marifat's plea being withdrawn more than six years after it was entered. Order Granting Motion to Withdraw Plea at 5 n.2. During trial, Marifat is entitled to probe witnesses' memories of events that occurred nearly ten years ago and to

---

[2] Additionally, the Second, Third, Seventh, Ninth, and Eleventh Circuits have all enforced rebuttal or impeachment Rule 410 waivers as agreed upon by the defendant. *United States v. Velez*, 354 F.3d 190, 195 (2d Cir. 2004); *United States v. Hardwick*, 544 F.3d 565, 569-71 (3d Cir. 2008); *United States v. Krilich,* 159 F.3d 1020, 1025 (7th Cir. 1998); *United States v. Rebbe*, 314 F.3d 402, 408 (9th Cir. 2002); *United States v. Tomlinson*, 674 Fed. Appx. 892, 897 (11th Cir. 2017). The enforceability of Rule 410 waivers is hardly an "open question," as Marifat contends.

challenge the strength of the government's case overall.  The waiver simply prevents him from excluding the statements he agreed would be admissible if he withdrew his plea.

### 2. The Plea Agreement Superseded the Proffer Agreement

Marifat's plea agreement states that it was the only agreement, understanding, or promise between Marifat and the government, and that "all statements made by the defendant" were admissible at trial in the event he withdrew his guilty plea.  Plea Agreement at 6.  Because the plea agreement became the only agreement between the government and the defendant, it "supersede[d] the proffer agreement and render[ed] its terms void." *United States v. Quesada*, 607 F.3d 1128, 1132 (6th Cir. 2010).  Marifat's claim that his plea agreement was "rescinded" upon his withdraw of his guilty plea is incorrect.  *See supra, Molinaro*, 11 F.3d at 864; *see also United States v. Jim* 786 F.3d 802, 813 (10th Cir. 2015).  So too is his claim that the plea agreement did not supersede the earlier proffer agreement because it did not explicitly refer to the earlier proffer agreement.  The plea agreement made clear that "all statements" made by Marifat "whether before or after this agreement" were admissible.  The only statements Marifat made to the government were pursuant to his proffer agreement.  Moreover, the plea agreement stated that no other agreements or promises between the government and defendant existed outside the plea agreement.[3]

### C. Marifat Knowingly and Voluntarily Waived the Protections of Rules 410 and 11(f)

Marifat has not asserted any basis (or offered any evidence) to conclude that he entered his plea agreement involuntarily.  His assertion that he was not advised of the waiver by his counsel is unsupported by any evidence and contradicted by the plea agreement that he signed and by statements he and his counsel made at his change of plea hearing.  Marifat confirmed he read and reviewed every part of the plea agreement with his attorney.  At the change of plea hearing, Marifat's attorney affirmed

---

[3] To the extent the plea agreement did not supersede the proffer agreement, Marifat interprets its scope too narrowly.  The proffer agreement provides that the government may use his pre-plea interview statements to "rebut any evidence or argument offered by or on behalf of" Marifat.  Accordingly, if Marifat offered any argument or evidence "inconsistent with his proffer statements," the government would be permitted to introduce his statements, even if Marifat does not testify, *Rebbe*, 314 F.3d at 407.  Marifat's statements from his Rule 11 hearing are admissible in the government's case-in-chief regardless as to whether the plea agreement superseded the proffer agreement.

1 | that he discussed the plea agreement with him. The plea agreement clearly states the waiver applies "if the defendant successfully moves to withdraw his plea." In fact, Marifat's assertion that "[a]t no point" was he advised regarding the applicability of the waiver, Dkt. 65 at 10, is contradicted by his own filings. In his motion to withdraw his plea, Marifat argued his plea agreement "contemplate[d] that Mr. Marifat may move to withdraw his plea," and inserted provisions "to use the statements that he made to law enforcement" against him. Crim. No. 2:11-039 WBS, Dkt. 67 at 11. Marifat cannot now claim ignorance after previously affirming under oath that he read and discussed the waiver with his attorneys.[4]

Nor is the waiver ambiguous, and Marifat's assertion to the contrary does not render the waiver unknowing or involuntary. Marifat contends that the waiver, which provides that his statements "shall be admissible in evidence," is ambiguous because it could be read to apply for purposes of impeachment, but not to evidence introduced in government's case-in-chief. Dkt 65 at 10. But the term "shall be admissible in evidence" is not ambiguous. It is commonly used and well understood to include evidence introduced in a case-in-chief. *See, e.g.*, *Sinotes-Cruz v. Gonzales*, 468 F.3d 1190, 1196 (9th Cir. 2006) (explaining that a statute prescribing that electronic records of a conviction "shall be admissible as evidence" in removal proceedings set forth "the conditions under which an electronically transmitted document *must* be admitted") (emphasis in original); *see also* 18 U.S.C. § 3501(a) ("a confession . . . *shall be admissible in evidence* if it is voluntarily given") (emphasis added), abrogated by *Dickerson v. United States*, 530 U.S. 428, 443 (2000) (presuming that § 3501 permitted the government to use a defendant's voluntary confession in its case-in-chief even if the defendant did not receive adequate *Miranda* warnings).

Marifat's understanding of his plea agreement, and the waivers contained therein, is distinguishable from the defendant in *United States v. Portillo-Cano*, 192 F.3d 1246 (9th Cir. 1999). In *Portillo-Cano*, the Ninth Circuit declined to enforce an appellate waiver in defendant's plea agreement

---

[4] Marifat asserts that "he clearly did not interpret" the waiver to apply after he withdrew his plea "or else the decision to withdraw his plea would seem unwise." Dkt. 65 at 9. Whether Marifat's decision was "wise" is irrelevant. Marifat triggered the waiver by withdrawing his plea. That decision fulfilled a condition precedent; it is not indicative that the waiver was unknowing.

because the court did not advise the defendant of the nature of the charges against him. *Id.* at 1249. Whereas the court in *Portillo-Cano* presumed "total ignorance of the charge on the part of the defendant," *id.*, here, the court advised Marifat of the nature of the charges against him and Marifat indicated that he freely and voluntarily entered his plea agreement.[5]

Notably, Marifat does not contend his proffer agreement was unknowing or involuntary, despite receiving no advisements from the court regarding its terms. In contrast, Marifat's affirmation under oath that he entered his plea agreement "freely and voluntarily with the advice of [his] attorneys" belies his claim that the waiver contained in his plea agreement was unknowing and involuntary. For both the proffer and the plea agreement, the validity and interpretation of the terms does not turn on what advisements he received. In both situations, Marifat signaled that he understood and freely consented to the terms.

## CONCLUSION

For all of the foregoing reasons, the government requests that the Court enforce the terms of Marifat's waiver, and permit the government to introduce in its case-in-chief statements Marifat made at his change of plea hearing and during pre-plea interviews.

DATE: September 19, 2018

Respectfully submitted,

/s/
ANDREW MAST
Trial Attorney
Antitrust Division
United States Department of Justice

---

[5] This Court has already opined that Marifat's plea was "knowing and voluntary." Transcript of Pretrial Motions Hearing at 16:2-5, 12-16; *see also* Order granting motion to withdraw plea at 4 (indicating "[n]ot for one minute" did the Court believe Marifat did not understand his trial rights).