ANDREW MAST (CSBN 284070)
JENNIFER HANE (CSBN 275729)
ARSHIA NAJAFI (CSBN 311229)
Trial Attorneys
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue, Room 10-0101
San Francisco, California 94102-3478
Telephone: (415) 934-5300

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>         v.<br><br>YAMA MARIFAT,<br><br>              Defendant. | Case No. 2:17-CR-0189-WBS<br><br>**TRIAL BRIEF OF THE UNITED STATES**<br><br>TRIAL: October 3, 2018<br>TIME: 9:00 a.m.<br>COURT: Hon. William B. Shubb |

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................... 1

II. STATEMENT OF FACTS ............................................................................................. 1

  A.  Procedural History ...................................................................................................... 1

    1.  The Defendant ...................................................................................................... 1

    2.  The Co-Conspirators ........................................................................................... 2

  B.  The Bid-Rigging Conspiracy ..................................................................................... 2

    1.  Overview ............................................................................................................... 2

    2.  Defendant's Role ................................................................................................. 4

III. EVIDENCE ..................................................................................................................... 4

  A.  Witnesses ..................................................................................................................... 4

  B.  Documents ................................................................................................................... 4

  C.  Other Evidence ........................................................................................................... 5

IV. SUBSTANTIVE LAW .................................................................................................... 5

  A.  The Elements of Count One: The Sherman Act 15 U.S.C. § 1 ......................... 5

  B.  Bid Rigging Is a *Per Se* Violation of the Sherman Act ................................... 5

  C.  The Agreement Is the Crime .................................................................................... 6

  D.  *Per Se* Treatment Applies to Agreements Between Actual or Potential Competitors ..... 7

  E.  The Agreement Does Not Need To Be Explicit or Formal ................................ 7

  F.  Interstate Commerce .................................................................................................. 8

V.  EVIDENTIARY ISSUES .............................................................................................. 8

  A.  Marifat's Proffer Statements .................................................................................... 8

  B.  Marifat's Prior Conviction for Grand Theft is Admissible for Impeachment Purposes Under Federal Rule of Evidence 609(a)(2) ................................................................ 9

  C.  Co-Conspirator Statements ..................................................................................... 10

  D.  The Defendant's Own Out-of-Court Statements Are Hearsay ....................... 11

  E.  Use of Agent Reports for Impeachment is Improper ....................................... 12

F.   Business Records and Certified Public Records are Admissible Without the Testimony of a Document Custodian ........................................................................................................ 12

   1.   Auction Paperwork and Bank Records ........................................................ 13

   2.   Certified Public Incorporation Records ...................................................... 13

G.   Summary Charts ................................................................................................. 14

H.   Advice-of-Counsel Defense ................................................................................. 15

I.   Justifications for a Bid-Rigging Agreement are Irrelevant and Only Encourage Jury Nullification ................................................................................................................... 16

J.   Possible Consequences of Conviction ................................................................. 17

K.   Use of Plea Agreements ..................................................................................... 18

L.   Reciprocal Discovery ......................................................................................... 19

M.   Exclusion of Witnesses ...................................................................................... 19

**VI.   CONCLUSION ...................................................................................................... 20**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Am. Tobacco Co. v. United States*, 328 U.S. 781 (1946)..................................................... 7

*Bourjaily v. United States*, 483 U.S. 171 (1987) ................................................. 10, 11

*Brewer v. City of Napa*, 210 F.3d 1093 (9th Cir. 2000) (citing *United States v. Williams*, 642
   F.2d 1369 (5th Cir. 1981) ............................................................... 10

*Cheek v. United States*, 498 U.S. 192 (1991)................................................................ 16

*Doctors, Inc. v. Blue Cross of Greater Philadelphia*, 490 F.2d 48 (3d Cir. 1973)........................ 8

*Duplex Printing Press Co. v. Deering*, 254 U.S. 443 (1921) ........................................ 6

*Esco Corp. v. United States*, 340 F.2d 1000 (9th Cir. 1965) ........................................ 7

*Garlington v. O'Leary*, 879 F.2d 277 (7th Cir. 1989) .................................................. 11

*Hughes v. United States*, 953 F.2d 531 (9th Cir. 1992)................................................ 14

*Interstate Circuit, Inc. v. United States*, 306 U.S. 208  (1939)..................................... 7

*Nash v. United States*, 229 U.S. 373 (1913) ............................................................ 6

*Parente v. United States*, 249 F.2d 752 (9th Cir. 1957)............................................... 11

*Rogers v. United States*, 422 U.S. 35 (1975) ......................................................... 17

*United States v. Aguilar*, 883 F.2d 662 (9th Cir. 1989)............................................... 16

*United States v. Almonte*, 956 F.2d 27 (2d Cir. 1992)................................................. 12

*United States v. Alston*, 974 F.2d 1206 (9th Cir. 1992)............................................... 5

*United States v. Baker*, 10 F.3d 1374 (9th Cir. 1993), *overruled on other grounds by United*
   *States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000) ................................................. 14

*United States v. Barrow*, 400 F.3d 109 (2d Cir. 2005) ............................................... 9

*United States v. Bensinger Co.*, 430 F.2d 584 (8th Cir. 1970) ....................................... 6

*United States v. Booker*, 543 U.S. 220 (2005) ....................................................... 12

*United States v. Boulware*, 470 F.3d 931 (9th Cir. 2006) ............................................ 14

*United States v. Brighton Building & Maintenance Co.*, 598 F.2d 1101 (7th Cir.); *cert denied*,
   444 U.S. 840 (1979)................................................................................. 6

*United States v. Brika*, 416 F.3d 514 (6th Cir. 2005) ............................................... 12

*United States v. Brown*, 936 F.2d 1042 (9th Cir. 1991)..................................................15

*United States v. Dadanian*, 818 F.2d 1443 (9th Cir. 1987), *modified on other grounds*, 856 F.2d
1391 (9th Cir. 1988)........................................................................................18

*United States v. Dixon*, 547 F.2d 1079 (9th Cir. 1976) ...............................................10

*United States v. Frank*, 956 F.2d 872 (9th Cir. 1992) ................................................17

*United States v. Gardner*, 611 F.2d 770 (9th Cir. 1980)..............................................15

*United States v. Giordano*, 261 F.3d 1134, 1138 (11th Cir. 2001)....................................8

*United States v. Glenn*, 667 F.2d 1269 (9th Cir. 1982) ................................................10

*United States v. Guthrie*, 814 F. Supp. 942 (E.D. Wash. 1993) *aff'd,* 17 F.3d 397 (9th Cir. 1994)
...................................................................................................5, 8

*United States v. Halbert*, 640 F.2d 1000 (9th Cir. 1981)..............................................18

*United States v. Hardwick*, 544 F.3d 565 (3d Cir. 2008)...............................................9

*United States v. Joyce*, No. 17-10269, 2018 WL 3370812, at *2 (9th Cir. July 11, 2018) ...........6

*United States v. Koppers Co., Inc.*, 652 F.2d 290 (2d Cir. 1981); *cert. denied*, 454 U.S. 1083
(1981) ............................................................................................6

*United States v. Kreimer*, 609 F.2d 126 (5th Cir. 1980)...............................................17

*United States v. Krilich*, 159 F.3d 1020  (7th Cir. 1998)..............................................9

*United States v. Larson*, 495 F.3d 1094 (9th Cir. 2007)...............................................18

*United States v. Lindsey,* 827 F.3d 865 (9th Cir. 2016)...............................................17

*United States v. Mitchell*, 502 F.3d 931 (9th Cir. 2007);.............................................11

*United States v. Monroe*, 943 F.2d 1007 (9th Cir. 1991)............................................18, 19

*United States v. Navarro-Montes*, 521 F. App'x 611  (9th Cir. 2013) ................................18

*United States v. Necoechea*, 986 F.2d 1273, (9th Cir. 1993)........................................18, 19

*United States v. ORS, Inc.*, 997 F.2d 628  (9th Cir. 1993)............................................8

*United States v. Ortega*, 203 F.3d 675 (9th Cir. 2000)...............................................11

*United States v. Palmer*, 458 F.2d 663 (9th Cir. 1972) ..............................................16

*United States v. Paramount Pictures, Inc.*, 334 U.S. 131 (1948) ....................................16

*United States v. Perez*, 658 F.2d 654 (9th Cir. 1981) ...............................................11

*United States v. Portsmouth Paving Co.*, 694 F.2d 312 (4th Cir. 1982)........................................ 5

*United States v. Rebbe*, 314 F.3d 402,  (9th Cir. 2002) ..................................................... 8

*United States v. Reed*, 726 F.2d 570 (9th Cir. 1984) ......................................................... 17

*United States v. Reicher*, 983 F.2d 168 (10th Cir. 1992)..................................................... 7

*United States v. Robinson*, No. 90-50157, 1991 U.S. App. LEXIS 356, at *9 (9th Cir. Jan. 9, 1991) ...................................................................................................... 10

*United States v. Romer*, 148 F.3d 359 (4th Cir. 1998)................................................... 6, 7, 8

*United States v. Ruiz Montes*, Nos. 08-10539, 08-10559, 421 Fed. Appx. 670 (9th Cir. 2011)... 15

*United States v. Scarmazzo*, 554 F. Supp. 2d 1102 (E.D. Cal. 2008), *aff'd sub nom* ............ 15, 17

*United States v. Schoenborn*, 4 F.3d 1424 (7th Cir. 1993) ................................................. 12

*United States v. Scholl*, 166 F.3d 964 (9th Cir. 1999) ...................................................... 19

*United States v. Stackpole*, 811 F.2d 689 (1st Cir. 1987) .................................................. 19

*United States v. Strassini*, 59 Fed. Appx. 550 (4th Cir. 2003).............................................. 6

*United States v. Tille*, 729 F.2d 615 (9th Cir. 1984)........................................................ 11

*United States v. Towns*, 718 F.3d 404 (5th Cir. 2013)....................................................... 13

*United States v. Trenton Potteries*, 273 U.S. 392 at 402 (1927)............................................. 6

*United States v. W.F. Brinkley & Son Construction Co., Inc.*, 783 F.2d 1157 (4th Cir. 1986) ...... 7

*United States v. Weiland*, 420 F.3d 1062 (9th Cir. 2005)..................................................... 13

*United States v. Williams*, 642 F.2d 136 (5th Cir. 1981)..................................................... 10

*United States v. Wood*, 446 F.2d 505 (9th Cir. 1971) ........................................................ 15

*United States v. Yarbrough*, 852 F.2d 1522 (9th Cir. 1988).................................................. 11

*United States v. Zemek*, 634 F.2d 1159 (9th Cir. 1980) ...................................................... 11

**Statutes**

15 U.S.C. § 1 Bid Rigging ....................................................................... 1, 5, 6

18 U.S.C. § 371 ............................................................................................ 6

California Civil Code § 2924 *et seq.*................................................................ 2

**Other Authorities**

ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases* ............ 5, 15

**Rules**

Fed. R. Evid. 801(d) ......................................................................................................... 10, 15

Fed. R. Evid. 801(d)(2)(A). ..................................................................................................... 11

Fed. R. Evid. 801(d)(2)(E) ............................................................................................... 10, 15

Fed. R. Evid. 803(6)(D) ............................................................................................................ 12

Fed. R. Evid. 902(12) ................................................................................................................ 13

Federal Rule of Criminal Procedure 16(b) .............................................................................. 19

Federal Rule of Criminal Procedure 16(d)(2) ......................................................................... 19

Federal Rule of Evidence 609(a)(2) ..................................................................................... 9, 10

Federal Rule of Evidence 902(1) ........................................................................................ 13, 14

Federal Rule of Evidence 902(11) ........................................................................................ 4, 13

Federal Rule of Evidence 902(4) ........................................................................................ 13, 14

Federal Rules of Evidence 401, 402, and 403 .......................................................................... 17

I.      **INTRODUCTION**

The United States respectfully submits this Trial Brief for the assistance of the Court.  It sets forth a summary of the facts, a discussion of the substantive law, and an overview of the anticipated issues at trial.

II.     **STATEMENT OF FACTS**

A.      **Procedural History**

1.      **The Defendant**

On January 28, 2011, the government filed an information charging Yama Marifat with one count each of bid rigging and conspiracy to commit mail fraud.  On February 24, 2011, Marifat signed a written plea agreement with the government in which he agreed to plead guilty and also waive certain rights in the event he later withdrew his guilty plea.  On March 7, 2011, he pleaded guilty to both counts.  On September 11, 2016, Marifat filed a motion to withdraw his plea.  The Court granted the motion, concluding that the failure to specifically advise Marifat of certain rights—his right to testify, present evidence, and compel attendance of witnesses—presented a fair and just reason to permit him to withdraw his guilty plea.

After Marifat withdrew his guilty plea, the Court granted Marifat's unopposed motion to dismiss the information.  On October 19, 2017, a grand jury indicted Marifat on one count of bid rigging in violation of 15 U.S.C. § 1, for conspiring to rig bids at public real estate foreclosure auctions in San Joaquin County between April 2009 and October 2009, the same bid-rigging conspiracy charge to which Marifat pleaded guilty in 2011.  The present indictment does not include a mail-fraud charge.

On August 2, 2018, the defendant filed a petition for writ of mandamus in the Ninth Circuit challenging this Court's prior Order, Doc. No. 40, denying his motion to dismiss based on the statute of limitations.  The defendant subsequently sought a stay in this case pending the Ninth Circuit's decision, which the Court denied on August 20, 2018.  Doc. No. 52.  Thereafter, Marifat filed an urgent motion with the Ninth Circuit to stay these proceedings.  On September 18, 2018, the Ninth Circuit denied the petition for writ of mandamus and denied the motion to stay as moot.  Doc. No. 67.

On August 20, 2018, Marifat appeared for a trial confirmation hearing. Doc. No. 51. Trial is scheduled to begin on October 3, 2018.

### 2. The Co-Conspirators

This Court has previously sentenced twelve co-conspirators for their participation in the bid-rigging conspiracy at the San Joaquin County foreclosure auctions. Andrew Katakis and Donald Parker were each sentenced post-trial for one count of bid rigging on November 6, 2017, and January 8, 2018, respectively. *United States v. Katakis*, 11-CR-511 WBS. In addition, ten other individuals pleaded guilty pursuant to a plea agreement in this case and were sentenced by this Court on September 12, 2016. *United States v. Chandler*, 11-CR-511 WBS; *United States v. Northcutt*, 11-CR-038 WBS; *United States v. Ghio*, 2:10-CR-144 WBS; *United States v. Swanger*, 11-CR-492 WBS; *United States v. Hutz*, 10-CR-238 WBS; *United States v. Vanzetti*, 10-CR-239 WBS; *United States v. Jackson*, 11-CR-090 WBS; *United States v. Olmstead*, 11-CR-291 WBS; *United States v. Rose*, 11-CR-292 WBS; *United States v. Joachim*, 11-CR-511 WBS.

### B. The Bid-Rigging Conspiracy

### 1. Overview

When California homeowners default on their mortgages, state law governs the process for the mortgage lender (or other beneficiary) to recoup money on the foreclosure. In California, the foreclosure process is nonjudicial, which means the foreclosed homes are sold by public auction in the county in which the home is located. California Civil Code § 2924 *et seq.* governs the foreclosure process.

After a foreclosure is initiated, the beneficiary hires a trustee company to handle the foreclosure process. The trustee company typically hires a publishing and posting company to post the required notices and conduct the auction. The auctioneer, who is also called the crier, announces the sale for each home being auctioned, qualifies the bidders, conducts the auction, collects funds from the highest bidder, and mails the completed paperwork and funds to the trustee company. The trustee company then mails the deed to the winning bidder and sends the sale proceeds to the beneficiary.

In San Joaquin County, the auctions occurred on the steps outside the county courthouse in Stockton.  During 2009, Marifat and other regulars at the foreclosure auctions joined in a conspiracy to thwart the competitive process.  The group of conspirators were real estate investors who made money by purchasing foreclosed homes in San Joaquin County, refurbishing them, and selling them for a profit.  Their scheme had the following three phases:

**Public Auction - Agreement Not to Bid.**  First, instead of competing at the public auction, the conspirators agreed not to bid against each other for certain properties.  They designated one member of the conspiracy to bid at the public auction, while the rest refrained from bidding.  In order to keep outside bidders from competing and driving prices up, the conspirators tried to dissuade outsiders from bidding or tried to get them to join in the scheme.  By suppressing competition, the group frequently obtained properties at the public auction for the lowest possible price – a penny over the opening bid.

**Determine Winner and Payoff Amount.**  Second, after the public auction, the conspirators determined who was going to take title to the property and the amount of the payoff to the other bidders.  At times, the bidder who wanted to purchase the home paid the others a negotiated flat amount to refrain from bidding.  More frequently, the conspirators held private auctions, or "rounds," in which they re-auctioned the property in a second, private auction just among the conspirators.  The highest bidder in the round obtained the property and, in return, owed payoffs to the losing round bidders for agreeing not to bid at the public auctions.  The total payoff amount was the difference between the winning bid at the public auction and the winning bid at the round.

**Paperwork and Payoffs.**  Finally, in order to acquire title to the rigged property, the winning bidder at the round submitted his endorsed cashier's checks to the crier and filled out paperwork known as the receipt of funds ("ROF").  Both the ROF and cashier's checks were later mailed to the trustee by the crier.  The trustee then forwarded the cashier's checks to the beneficiary banks and issued the trustee's deed upon sale ("TDUS") to the round winner.  The winner was also responsible for making the payoffs to other conspirators as determined by negotiation or through the rounds.

### 2. Defendant's Role

Marifat joined the conspiracy around April 2009.  The evidence will show that he participated in more than 30 rounds and purchased 12 rigged homes.  The evidence at trial will also show that Marifat received payoffs totaling more than $90,000 and paid co-conspirators more than $30,000 in exchange for agreeing not to bid at the public auction.

## III.   EVIDENCE

### A.   Witnesses

The United States anticipates calling approximately 10 witnesses.  Several witnesses will testify about the bid-rigging conspiracy and the defendant's role in it.  Other witnesses who were present at the auctions may testify briefly about the defendant.

As discussed in Section V.A. below, former Department of Justice paralegal Cynthia Liao may testify about statements Marifat made during interviews with DOJ attorneys.  And retired FBI Special Agent Todd Davis may testify about his interviews of Marifat.

The government will also call a representative from a trustee company to explain the foreclosure process and auction paperwork.  Witnesses from JPMorgan Chase will testify about receipt of funds as the beneficiary of foreclosure sales.  Agent Lewis will also summarize information about trustee sales numbers and mailings for certain properties.

Other witnesses may give brief testimony about business records and/or practices.  As discussed in Section V.F. below, the government will move to introduce documents pursuant to Rule 902(11).  If necessary, the government will call document custodians from banks, trustee companies, and posting companies to admit documents.

### B.   Documents

The United States' exhibit list includes approximately 225 exhibits.  The documents are labeled numerically and are generally in order by document type.  To aid in the organization, several exhibit numbers have been left blank.  The exhibit list is filed on the docket as Doc. No. 75.  The documents generally fall into the following categories:

**Conspirator notes.**  Some conspirators prepared spreadsheets or took handwritten notes or round sheets that listed the names of the conspirators who were a part of the bid-rigging

agreement, the amount they bid in the round, the winning bidder, the payoff amount owned, the name of the rigged property, and the date that the auction of the property took place.

**Checks**.  The conspirators usually paid each other with personal and cashier's checks. The government will offer copies of payoff checks and check records.

**Auction paperwork.**  This category includes ROFs, bid logs, TDUSs, cashier's checks, records of payments to mortgage holders, FedEx receipts, and other proofs of mailing.

## C.    Other Evidence

In addition, the government may introduce charts summarizing round sheets involving the defendant on multiple rigged properties; trustee sales numbers, mailings, and proceeds for certain properties; and payoffs involving Marifat.

## IV.    SUBSTANTIVE LAW

### A.    The Elements of Count One: The Sherman Act 15 U.S.C. § 1

The elements of bid rigging are:

One: the charged conspiracy described in the indictment existed at or about the time alleged;

Two: the defendant knowingly became a member of the conspiracy; and

Three: the conspiracy described in the indictment either affected interstate commerce in goods or services or occurred within the flow of interstate commerce in goods and services.

*See* ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases*, p. 47; *United States v. Alston*, 974 F.2d 1206, 1210 (9th Cir. 1992).

### B.    Bid Rigging Is a *Per Se* Violation of the Sherman Act

Bid rigging is "an agreement to interfere with competition for a transaction conducted by bid." *United States v. Guthrie*, 814 F. Supp. 942, 950 (E.D. Wash. 1993) (involving bid rigging at real estate foreclosure auctions), *aff'd*, 17 F.3d 397 (9th Cir. 1994); *United States v. Portsmouth Paving Co.*, 694 F.2d 312, 325 n.18 (4th Cir. 1982) ("Any agreement between competitors pursuant to which contract offers are to be submitted or withheld from a third party constitutes bid rigging").  Put differently, an agreement to rig bids is "a price-fixing agreement of

1   the simplest kind." *United States v. Bensinger Co.*, 430 F.2d 584, 589 (8th Cir. 1970),

2   *superseded on other grounds by DCS Sanitation Mgmt., Inc. v. Occupational Safety & Health*

3   *Review Comm'n*, 82 F.3d 812 (8th Cir. 1996); *see also United States v. Romer*, 148 F.3d 359,

4   368 (4th Cir. 1998) (involving real estate foreclosure auction bid-rigging case), *abrogated on*

5   *other grounds by United States v. Strassini*, 59 Fed. Appx. 550 (4th Cir. 2003).

6          Section 1 of the Sherman Antitrust Act declares "[e]very contract, combination . . . or

7   conspiracy, in restraint of trade" to be illegal.  15 U.S.C. § 1.  It is well-settled that bid rigging is

8   a *per se* violation of the Sherman Act.  *United States v. Koppers Co., Inc.*, 652 F.2d 290, 294 (2d

9   Cir. 1981), *cert. denied*, 454 U.S. 1083 (1981) (explaining that bid rigging is a per se violation

10  and the Sherman Act simply meant that an "'agreement among competitors to rig bids is

11  illegal'") (quoting *United States v. Brighton Building & Maintenance Co.*, 598 F.2d 1101, 1106

12  (7th Cir.), *cert denied*, 444 U.S. 840 (1979)); *United States v. Joyce*, No. 17-10269, 2018 WL

13  3370812, at *2 (9th Cir. July 11, 2018) (holding, in a foreclosure auction bid-rigging case, that

14  bid rigging is a per se violation of the Sherman Act).

15       **C.     The Agreement Is the Crime**

16         A conspiracy under the Sherman Act is similar to any other criminal conspiracy: a

17  combination of two or more persons or entities engaged in concerted action to accomplish an

18  illegal purpose or to accomplish a legal purpose by illegal means.  *Duplex Printing Press Co. v.*

19  *Deering*, 254 U.S. 443, 465–66 (1921).  Unlike the general conspiracy statute, 18 U.S.C. § 371,

20  however, the Sherman Act does not require proof of an overt act.  *Nash v. United States*, 229

21  U.S. 373, 378 (1913).  The conspiratorial agreement, itself, constitutes the complete criminal

22  offense.  *See United States v. Socony-Vacuum Oil Co. Inc.*, 310 U.S. 150, 224 n.59 (1940).  It is

23  "immaterial whether the agreements were ever actually carried out, whether the purpose of the

24  conspiracy was accomplished in whole or in part, or whether an effort was made to carry the

25  object of the conspiracy into effect."  *Plymouth Dealers' Ass'n of N. Cal. v. United States*, 279

26  F.2d 128, 132 (9th Cir. 1960) (quoting *United States v. Trenton Potteries Co.*, 273 U.S. 392, 402

27  (1927)).

28  //

### D.     *Per Se* Treatment Applies to Agreements Between Actual or Potential Competitors

A *per se* bid-rigging violation requires an agreement between competitors. *See Romer*, 148 F.3d at 367 (4th Cir. 1998) ("bid-rigging is typically defined as an agreement between competitors") (internal quotations omitted).  The parties to the agreement need not actually compete; it is sufficient that they have the potential to compete. *See*, *e.g.*, *United States v. Reicher*, 983 F.2d 168, 170 (10th Cir. 1992) (finding bid rigging existed where a company "held itself out as a competitor for the purposes of rigging what was supposed to be a competitive process," even when that company could not actually perform); *United States v. W.F. Brinkley & Son Construction Co., Inc.*, 783 F.2d 1157, 1159–60 (4th Cir. 1986) (upholding a bid-rigging conviction even though the defendant had decided on its own not to compete for the bid).  Noncompetitors can also join a bid-rigging conspiracy. *See MMR Corp.*, 907 F.2d at 498 ("If there is a horizontal agreement between A and B, there is no reason why others joining that conspiracy must be competitors.").  For example, a party that holds itself out as a competitive threat can be properly convicted for bid rigging. *Id*.

### E.     The Agreement Does Not Need To Be Explicit or Formal

The evidence does not need to show that the competitors entered into an express or formal agreement or that they directly stated, either orally or in writing, the purpose of the agreement. *MMR*, 907 F.2d at 495 ("The government . . . is not required to prove a formal, express agreement with all the terms precisely set out and clearly understood by the conspirators.").  Indeed, an exchange of words is not required. *See Am. Tobacco Co. v. United States*, 328 U.S. 781, 809–10 (1946); *Esco Corp. v. United States*, 340 F.2d 1000, 1007 (9th Cir. 1965) ("A knowing wink can mean more than words.").  Thus, to secure a conviction, the government must show that a defendant, "knowing that concerted action was contemplated and invited, . . . gave [his] adherence to the scheme and participated in it." *Interstate Circuit, Inc. v. United States*, 306 U.S. 208, 226 (1939).

//

//

1    **F.    Interstate Commerce**

2        The interstate commerce element requires proof that the conspirators' business activity

3    was either in the flow of interstate commerce or had a substantial effect on interstate commerce.

4    *United States v. Giordano*, 261 F.3d 1134, 1138 (11th Cir. 2001); *see also United States v. ORS,*

5    *Inc.*, 997 F.2d 628, 630 (9th Cir. 1993) (discussing both the "flow" and "effect" theories).

6    "[J]urisdiction is established if any one of [the allegations on interstate commerce] satisfies"

7    either the flow theory or the effect theory.  *Doctors, Inc. v. Blue Cross of Greater Philadelphia*,

8    490 F.2d 48, 51 (3d Cir. 1973).  The flow theory applies in this case.  Mortgage holders for some

9    properties subject to the bid rigging were located outside California.  The government plans to

10   offer testimony and documents showing that proceeds from affected auctions were sent to these

11   out-of-state lenders.  *See Guthrie*, 814 F. Supp. at 946 (holding that bid rigging at foreclosure

12   auctions in Spokane, Washington met the interstate commerce requirement because out-of-state

13   banks owned the mortgages and received the proceeds of the auctions); *Romer*, 148 F.3d at 364–

14   66 (finding foreclosure auction is not purely local, where out-of-state lenders initiated

15   foreclosure, directed terms of the auction, and received some portion of sale proceeds across

16   state lines).

17   **V.    EVIDENTIARY ISSUES**

18       **A.    Marifat's Proffer Statements**

19       Marifat entered a proffer agreement on August 6, 2010, specifying that the government

20   may use his statements in interviews "to rebut any evidence or arguments" offered by or on his

21   behalf.  This rebuttal provision is broad in scope and not limited to impeachment.  In its Order on

22   the government's motion to admit defendant's admissions, the Court held that provisions in the

23   proffer agreement remains in effect.  Doc. No. 70.  Thus, the government will seek to admit

24   Marifat's proffer statements in rebuttal if the defense presents evidence or arguments, in any

25   form, that are inconsistent with those earlier statements.

26       In the Ninth Circuit, rebuttal is triggered with any attempt to argue or present a defense

27   inconsistent with proffer statements, irrespective of whether the defendant testifies.  *United*

28   *States v. Rebbe*, 314 F.3d 402, 407 (9th Cir. 2002).  This "encourages [Marifat] to present

defenses at trial that are not fraudulent." *Id*. at 408.  The form of the evidence or arguments does not matter, as long as it is inconsistent with the defendant's proffer statements. *Id*. at 405.  Such evidence includes testimony elicited through cross-examination of a witness or statements made by the defense during opening statement. *Id*.; *United States v. Barrow*, 400 F.3d 109, 119 (2d Cir. 2005).  It would be an "unnatural reading of the language" of waivers to discount rebuttal of testimony elicited in the defense's cross-examination. *United States v. Krilich*, 159 F.3d 1020, 1025 (7th Cir. 1998).  Moreover, rebuttal is triggered if the defense elicits testimony "aimed at inferring" facts that are inconsistent with proffer statements. *United States v. Hardwick*, 544 F.3d 565, 571 (3d Cir. 2008) (allowing introduction of proffer statements to rebut questioning "aimed at inferring that [someone else was] responsible for the murders").

During three detailed interviews with the government, Marifat admitted to and described his illegal conduct in the bid rigging conspiracy in San Joaquin County.  Among other things, Marifat described making payoffs, participating in rounds, and refraining from bidding at the public auction.  If Marifat presents or elicits any arguments or evidence that is inconsistent with his prior proffer statements and description of his illegal conduct—whether during an opening statement, cross-examination, through witnesses, or otherwise—then he triggers rebuttal and the government may use his proffer statements at trial.

### B.   Marifat's Prior Conviction for Grand Theft is Admissible for Impeachment Purposes Under Federal Rule of Evidence 609(a)(2)

Marifat was convicted of misdemeanor grand theft on January 3, 2013, pursuant to a plea of *nolo contendere*.  During the course of this crime, Marifat engaged in fraudulent conduct.  The conviction is admissible should Marifat testify since it goes to his propensity for truthfulness as a witness.

For any crime less than ten years old, Federal Rule of Evidence Rule 609(a)(2) provides that "regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement."  Moreover, if a crime is found to involve a dishonest act or false statement, Rule 609(a)(2) "requires no balancing and allows for no

1   discretion." *United States v. Robinson*, No. 90-50157, 1991 U.S. App. LEXIS 356, at *9 (9th

2   Cir. Jan. 9, 1991); *United States v. Dixon*, 547 F.2d 1079, 1083 (9th Cir. 1976) (trial court has no

3   discretion "to exclude evidence of convictions of a crime involving dishonesty or false statement

4   . . . which are less than ten years old"). While certain types of crime—like perjury, fraud,

5   forgery, or embezzlement—are dishonest under Rule 609(a)(2), crimes like burglary or theft

6   "may nevertheless be admissible under [R]ule 609(a)(2) if the crime was actually committed by

7   fraudulent or deceitful means." *United States v. Glenn*, 667 F.2d 1269, 1273 (9th Cir. 1982). In

8   such instances, the government has the burden of producing facts demonstrating that the

9   particular conviction involved fraud or deceit. *Id.*

10         Furthermore, a conviction is admissible, regardless of the basis of the conviction.

11   Specifically, courts explain that "[o]nce convicted, whether as a result of a plea of guilty, *nolo*

12   *contendere*, or of not guilty (followed by trial), convictions stand on the same footing, unless

13   there be a specific statute creating a difference." *United States v. Williams*, 642 F.2d 136, 139

14   (5th Cir. 1981); *also e.g., Brewer v. City of Napa*, 210 F.3d 1093, 1096 (9th Cir. 2000) (citing

15   *United States v. Williams*, 642 F.2d 136, 149 (5th Cir. 1981)) (holding that "evidence of felony

16   convictions based on *nolo contendere* pleas can be admitted for impeachment purposes under

17   Federal Rule of Evidence 609").

18         If Marifat testifies at trial, the government will produce facts demonstrating that Marifat's

19   conduct in committing this crime was fraudulent and deceitful. *See*, *e.g.*, *United States v. Glenn*,

20   667 F.2d 1269, 1273 (9th Cir. 1982). Also, Marifat's conviction occurred in 2013, less than ten

21   years ago. As a result, no further analysis is necessary under Rule 609(a)(2). Should he testify,

22   Marifat's conviction for grand theft is admissible.

23         **C.      Co-Conspirator Statements**

24         The government will present statements that Marifat's co-conspirators made in

25   furtherance of the charged conspiracy. Declarations by one conspirator during the course of and

26   in furtherance of a conspiracy may be used against another conspirator, as these declarations are

27   not hearsay. Fed. R. Evid. 801(d)(2)(E); *see Bourjaily v. United States*, 483 U.S. 171, 173, 181

28   (1987). Under Rule 801, statements include "a person's oral assertion, written assertion, or

nonverbal conduct, if the person intended it as an assertion." Fed. R. Evid. 801(a).  Accordingly, co-conspirators' written records of the conspiracy including, for example, round sheets and memo lines on payoff checks are admissible as co-conspirator statements.

A statement is "in furtherance" if it "further[s] the common objectives of the conspiracy or set[s] in motion transactions that are an integral part of the conspiracy."  *United States v. Yarbrough*, 852 F.2d 1522, 1535 (9th Cir. 1988).  The "in furtherance" requirement is read broadly.  Courts have included the kinds of statements that will be offered as co-conspirator statements in this case, including: (1) statements made to induce enlistment or further participation in the group's activities, *Yarbrough*, 852 F.2d at 1535; (2) statements made to prompt further action on the part of the conspirators, *id*.; (3) statements made to allay a co-conspirator's fears, *id*. at 1536; (4) statements made to keep a conspirator abreast of a co-conspirator's activity, *id*.; and (5) statements related to the concealment of the criminal enterprise, *United States v. Tille*, 729 F.2d 615, 620 (9th Cir. 1984); *Garlington v. O'Leary*, 879 F.2d 277, 283 (7th Cir. 1989).

Courts may conditionally admit co-conspirator statements before the existence of a conspiracy is established.  *See United States v. Perez*, 658 F.2d 654, 658 (9th Cir. 1981); *United States v. Zemek*, 634 F.2d 1159, 1169 n.13 (9th Cir. 1980); *Parente v. United States*, 249 F.2d 752, 754 (9th Cir. 1957).  In determining whether the foundational requirements have been met, the preponderance-of-evidence standard applies.  *Bourjaily*, 483 U.S. at 175–76.  The Court may consider the statements themselves in conjunction with the surrounding circumstances.  *Id*.

### D.     The Defendant's Own Out-of-Court Statements Are Hearsay

In its case-in-chief, the government intends to introduce statements made by Marifat, as admissions of a party opponent.  Fed. R. Evid. 801(d)(2)(A).  When offered by the defendant, Marifat's own out-of-court statements are inadmissible hearsay.  *United States v. Mitchell*, 502 F.3d 931, 964–65 (9th Cir. 2007); *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000). This rule also prohibits a defendant from eliciting his own exculpatory statements when they are made contemporaneously with other, inculpatory statements.  *Ortega*, 203 F.3d at 682. Otherwise, a defendant would be "able to place his exculpatory statements before the jury

without subjecting himself to cross-examination, precisely what the hearsay rule forbids." *Id*. at 682 (internal quotations omitted).  Instead, if Marifat wishes to introduce such evidence, he must testify himself.  Neither the rule of completeness nor the Confrontation Clause compels a different result. *Id*. at 682–83.  In short, Marifat may not examine the government's witnesses about his own out of court statements, other than those which have been elicited by the government on direct.

### E.    Use of Agent Reports for Impeachment is Improper

The government's trial witnesses have been interviewed by FBI agents and Department of Justice attorneys and paralegals.  The agents and paralegals drafted summary reports of the interviews.  As these reports are statements of the agent or paralegal, Marifat may not impeach witnesses with these interview notes or summaries.

A third party's notes of a witness's statement may not be admitted as evidence of a prior inconsistent statement unless they are endorsed by the witness or are a "verbatim transcript of the witness's own words." *United States v. Almonte*, 956 F.2d 27, 29–30 (2d Cir. 1992) (per curiam).  "If a third party's notes reflect only that note-taker's summary characterization of a witness's prior statement, then the notes are irrelevant as an impeaching prior inconsistent statement, and thus inadmissible." *Almonte*, 956 F.2d at 29; *see also United States v. Brika*, 416 F.3d 514, 529 (6th Cir. 2005), abrogated on other grounds by *United States v. Booker*, 543 U.S. 220 (2005).  Because the interview notes and summaries are not verbatim statements of the witnesses and have not been reviewed or adopted by the witnesses, they are not admissible as extrinsic evidence of prior inconsistent statements.

### F.    Business Records and Certified Public Records are Admissible Without the Testimony of a Document Custodian

The United States intends to introduce self-authenticating business records such as auction paperwork and bank records, as well as certified public records of incorporation.  A qualified witness does not have to testify at trial and instead can sign a certificate of authentication for the business records that complies with Federal Rule of Evidence 902(11). Fed. R. Evid. 803(6)(D) ("all these conditions are shown by the testimony of the custodian or

1    another qualified witness, or by a certification that complies with Rule 902(11) or (12)"); Fed. R.

2    Evid. 902(11) (noting business records are admissible without authentication at trial if

3    accompanied "by a certification of the custodian or other qualified person" attesting that the

4    records satisfy the requirements of Rule 803(6)); *United States v. Towns*, 718 F.3d 404, 409 (5th

5    Cir. 2013) ("A proper foundation is laid for business records simply by an affidavit that attests to

6    the requisite elements of Federal Rule of Evidence 803(6).").

### 1.    Auction Paperwork and Bank Records

8    The auction paperwork and bank records the government intends to introduce at trial are

9    all accompanied by certifications establishing the foundation to admit these records pursuant to

10   Rules 803(6) and 902(11).  For business records to be admissible, "the following foundational

11   facts must be established through the custodian of records or another qualified witness: (1) the

12   records must have been made or transmitted by a person with knowledge at or near the time of

13   the incident recorded; and (2) the record must have been kept in the course of a regularly

14   conducted business activity."  *United States v. Ray*, 930 F.2d 1368, 1370 (9th Cir. 1991).  The

15   government submits that these documents are all self-authenticating under Federal Rule of

16   Evidence 902(11) as certified domestic records of a regularly conducted activity that meet the

17   requirements of Federal Rule of Evidence 803(6).  Additionally, the ROFs and TDUSs are

18   separately admissible under Rule 803(15) because they purport to establish or affect an interest

19   in property and statements made in the documents are relevant to the purpose of the documents.

20   *See* Fed. R. Evid. 803(15); *see also Kew v. Bank of America, N.A.*, Case No. H–11–2824, 2012

21   WL 1414978, at *3, n.4 (S.D. Tex. Apr. 23, 2012) ("amount of the mortgage loan is admissible

22   under Federal Rule of Evidence 803(15) as a statement in documents that affect an interest in

23   property").

### 2.    Certified Public Incorporation Records

25   Furthermore, domestic public documents that are certified, sealed, and signed are self-

26   authenticating under Federal Rule of Evidence 902(1) and 902(4).  *See, e.g.*, *United States v.*

27   *Weiland*, 420 F.3d 1062, 1073 (9th Cir. 2005) (holding that a defendant's records of conviction

28   and fingerprints were self-authenticating since they were certified in compliance with of Fed. R.

Evid. 902(2) and 902(4)); *Hughes v. United States*, 953 F.2d 531, 540 (9th Cir. 1992) (holding that IRS forms bearing an appropriate signature and certified under seal were admissible as self-authenticating domestic public documents under Fed. R. Evid. 902(1)).

The certified public incorporation records that the United States intends to introduce at trial are of Marifat Family, LLC, a company owned and controlled by the defendant. The incorporation records are accompanied by a certificate that bears an attestation from the California Secretary of State indicating that Marifat Family LLC is an entity qualified to transact business in California. The certificate also bears the signature of the California Secretary of State and the state seal. Since the incorporation records are sealed and signed, they are admissible under Fed. R. Evid. 902(1) and 902(4).

### G.   Summary Charts

The United States intends to introduce summary charts and testimonial aids, pursuant to Federal Rule of Evidence 611(a). The charts summarize numerous exhibits that the government intends to admit at trial and will be used to facilitate witness testimony about the underlying admitted exhibits. The charts will help the jury organize and understand the evidence that the government plans to introduce.

Rule 611(a) authorizes a court to permit the introduction of summary charts of admitted evidence at trial through its power to "exercise reasonable control over the mode . . . of . . . presenting evidence so as to: (1) make those procedures effective for determining the truth . . . [and] (2) avoid wasting time." Fed. R. Evid. 611(a); *United States v. Baker*, 10 F.3d 1374, 1411–12 (9th Cir. 1993), *overruled on other grounds by United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000). In addition to allowing use of summary charts during trial, it is within the discretion of the trial court to permit the jury to review Rule 611(a) summary charts of admitted evidence during deliberations, provided the court determines that the charts are accurate and will aid in the jury's examination of the underlying evidence. *See United States v. Boulware,* 470 F.3d 931, 935–36 (9th Cir. 2006) ("[W]e have elsewhere recognized a district court's discretion under Fed. R. Evid. 611(a) to admit summary exhibits for the purpose of assisting the jury in evaluating voluminous evidence."), *vacated on other* grounds, 552 U.S. 421 (2008); *United States v.*

1   *Gardner*, 611 F.2d 770, 776 (9th Cir. 1980) (admission of summary chart of previously admitted

2   evidence within court's discretion).

3        One chart that the government seeks to admit summarizes voluminous handwritten round

4   sheets that co-conspirator Ghio used to track bids in the rounds and payoffs involving the

5   defendant.  Another chart will identify the Trustee Sale Number, date of sale, relevant exhibit

6   number, and address for certain properties at issue.  And others will summarize Marifat's payoffs

7   on rigged properties, out-of-state mailings, and auction proceeds.  All of the underlying

8   documents are admissible and will be offered into evidence.  Ghio's round sheets and

9   spreadsheet are admissible as co-conspirator statements under Rule 801(d)(2)(E).  The auction-

10  related paperwork and bank records are admissible as business records under Rule 803(6).

11  Admitting these charts will contribute to the clarity of the presentation to the jury and avoid

12  needless consumption of time.  *See Gardner*, 611 F2d. at 776 (holding admissible chart based on

13  admitted evidence summarizing assets, liabilities, and expenditures in a tax fraud case).

14       **H.    Advice-of-Counsel Defense**

15       If the defendant attempts to raise an advice-of-counsel defense, it should be precluded.  In

16  an interview with the government, Marifat described telling a real estate attorney about the

17  second auctions, who purportedly said he did not think it was illegal, but referred to it as a gray

18  area.  Bid rigging, however, is a general intent crime.  Proof that the defendant specifically

19  intended to produce anticompetitive effects is not required.  *United States v. Brown*, 936 F.2d

20  1042, 1046 (9th Cir. 1991) (citations omitted) ("finding of intent to conspire to commit the

21  offense is sufficient").

22       Advice of counsel is not a defense to general intent crimes.  *United States v. Scarmazzo*,

23  554 F. Supp. 2d 1102, 1110 (E.D. Cal. 2008), *aff'd sub nom*, *United States v. Ruiz Montes*, 421

24  Fed. Appx. 670 (unpublished) (9th Cir. 2011) ("Good faith may be relevant in cases where

25  specific intent to violate the law is an element of the charged offense, but is not applicable to a

26  general intent crime."); *see also United States v. Wood*, 446 F.2d 505, 507 (9th Cir. 1971); ABA

27  Antitrust Section, *Model Criminal Antitrust Jury Instructions*, 54 (2009) ("It is not a defense that

28  the parties may have acted with good motives, or may have thought that what they were doing

was legal, or that the conspiracy may have had some good results."). Therefore, any argument for, or evidence of, defendant's reliance on the advice of counsel regarding the legality of the rounds cannot be used as a defense against bid rigging and should be excluded as irrelevant and unfairly prejudicial. Fed. R. Evid. 402, 403.

Moreover, any claim by Marifat that he did not know that his conduct was illegal is similarly irrelevant. As with any criminal prosecution, ignorance of the law is no defense to a Sherman Act violation. "The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system." *Cheek v. United States*, 498 U.S. 192, 199 (1991)); *see also United States v. Aguilar*, 883 F.2d 662, 673 (9th Cir. 1989) ("It is axiomatic that ignorance or mistake of law is no defense.").

## I.     Justifications for a Bid-Rigging Agreement are Irrelevant and Only Encourage Jury Nullification

Marifat may attempt to justify his participation in the conspiracy because of economic pressures. He may claim, for example, that he joined the conspiracy because he was coerced into participating in rounds by threats from competitors to bid up properties. Additionally, Marifat may blame the victims by arguing that the auctioneers who ran the auctions were aware of agreements to refrain from bidding, rounds, and/or payoffs or that the trustee companies were negligent in monitoring the auctions. He may also try to convince the jury that no harm was caused by the illegal conduct, because the banks were willing to sell the properties for the minimum auction price. Even if true, none of these arguments negate any element to a charge of bid rigging and instead would only confuse the jury and improperly encourage nullification.

First, it is well settled that financial duress is not a valid excuse for criminal conduct. *See, e.g., United States v. Palmer*, 458 F.2d 663, 665 (9th Cir. 1972) (holding that the threat of "a grievous financial loss, [does] not constitute that compulsion or duress which would excuse criminal conduct"); *United States v. Paramount Pictures, Inc.*, 334 U.S. 131, 161 (1948) ("acquiescence in an illegal scheme is as much a violation of the Sherman Act as the creation and promotion of one"). Second, any "blame the banks" argument would be irrelevant because evidence of the banks' conduct would only have the purpose of justifying *per se* illegal conduct,

which is an invalid defense.  *See Socony-Vacuum*, 310 U.S. at 218, 220–222.  The negligence of a crime victim also is not a valid defense.  *See United States v. Kreimer*, 609 F.2d 126, 132 (5th Cir. 1980) ("The victim's negligence is not a defense to criminal conduct.").  As the Ninth Circuit recently held in the mortgage-fraud context, "[t]wo wrongs do not make a right, and a lender's negligence, or even intentional disregard, cannot excuse another's criminal fraud." *United States v. Lindsey,* 827 F.3d 865, 870 (9th Cir. 2016) (citation omitted).  Finally, "[n]either a Defendant nor his attorney has the right to present evidence that is irrelevant to a legal defense to, or an element of, the crime charged."  *Scarmazzo*, 554 F. Supp. 2d at 1108.  Instead, "[v]erdicts must be based on the law and evidence, not on jury nullification."  *Id*.  Accordingly, the Court should exclude irrelevant arguments and evidence to prevent jury confusion.

## J.   Possible Consequences of Conviction

"It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict."  *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1992).  Thus, Marifat should be precluded from making any reference to punishment or the collateral consequences of conviction in statements, questions, or arguments during trial.  Fed. R. Evid. 401, 402, and 403.  The consequences of conviction for the defendant has no bearing on any fact at issue and therefore are wholly irrelevant to guilt or innocence.  *See Scarmazzo*, 554 F. Supp. 2d at 1109 (precluding consequences of the verdict, jury instruction regarding punishment, and "punishment evidence") (citing *Rogers v. United States*, 422 U.S. 35, 40 (1975); *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1991); *United States v. Reed*, 726 F.2d 570, 579 (9th Cir. 1984)).  Indeed, juries are instructed not to consider punishment in determining a defendant's guilt, because guilt should determine punishment, not vice versa.  *See Ninth Circuit Manual of Model Criminal Jury Instructions* 7.4 (2010); *Rogers*, 422 U.S. at 40 (explaining that the jury "should reach its verdict without regard to what sentence might be imposed").

Furthermore, the defendant should be limited during the cross-examination of the government's witnesses who entered a plea agreement as to the maximum sentence for the bid-rigging charges to which they pleaded guilty since they pleaded guilty to the same bid-rigging conspiracy for which Marifat is charged.  *See United States v. Dadanian*, 818 F.2d 1443, 1449

1   (9th Cir. 1987), *modified on other grounds*, 856 F.2d 1391 (9th Cir. 1988) (district court did not

2   violate Sixth Amendment by not allow cross-examination of a cooperating witness about his

3   maximum jail-time exposure); *United States v. Larson*, 495 F.3d 1094, 1103 (9th Cir. 2007)

4   (holding that the district court's limit on cross-examination of mandatory minimum sentence

5   faced by cooperating witness was not an abuse of discretion and did not violate defendant's

6   Confrontation Clause rights).  Similarly, if the United States introduces any plea agreements, as

7   discussed in Section V.K. below, it will redact reference to the maximum sentence.

8        **K.     Use of Plea Agreements**

9        The United States will elicit evidence and testimony of its cooperating witnesses' guilty

10  pleas and plea agreements.  Such evidence "may properly be considered by the jury in evaluating

11  witness credibility."  *United States v. Halbert*, 640 F.2d 1000, 1004 (9th Cir. 1981); *United*

12  *States v. Navarro-Montes,* 521 F. App'x 611, 613 (9th Cir. 2013) ("[A] cooperating witness

13  enter[ing] into a plea agreement is generally relevant to the witness's credibility.").  The

14  government may preemptively address the issue of witness credibility by informing the jury

15  about the existence of the plea agreement without waiting for the defense to first attack the

16  witness's credibility.  *See United States v. Curtin*, 489 F.3d 935, 940–41 (9th Cir. 2007)

17  (permitting anticipatory impeachment based on an anticipated defense) (citations omitted).

18       The only limitation the Ninth Circuit has put on the use of plea or cooperation

19  agreements during direct examination is that the government may not introduce portions of the

20  agreement that could bolster the credibility of the witness unless the defense has attacked it.  *See*

21  *United States v. Monroe*, 943 F.2d 1007, 1013 (9th Cir. 1991).  Once a witness's veracity is

22  attacked, however, the Ninth Circuit has held that reference to a "truthful testimony" requirement

23  does not constitute improper vouching.  *See United States v. Necoechea*, 986 F.2d 1273, 1277–

24  79 (9th Cir. 1993) (prosecutor's questions regarding plea agreement not improper where defense

25  counsel attacked witness's credibility); *Monro*e, 943 F.2d at 1013–14 (reference to the "truthful

26  testimony" provision in response to attack in the defense's opening statement is not vouching).

27       Accordingly, on direct the United States intends to introduce plea and cooperation

28  agreements where the requirements to testify truthfully have been redacted.  The government

will not elicit evidence of any truthfulness provision unless a witness's credibility is attacked. But, if the defendant uses a witness's plea agreement to challenge his credibility, the United States may introduce any truthful-testimony provision, so long as the government does not "imply a guaranty of [their] truthfulness, refer to extra-record facts, or reflect a personal opinion." *Necoechea*, 986 F.2d at 1278–79; *Monroe*, 943 F.2d at 1013–14.

### L.   Reciprocal Discovery

The United States provided early discovery, including producing discovery from the related *U.S. v. Katakis* trial to the defendant on May 31, 2017.  Supplemental productions were submitted on April 16, June 22, and August 20, 2018, and a copy of all admitted exhibits in the *Katakis* trial was provided on August 24, 2018.  The government has repeatedly requested in writing that Marifat provide reciprocal discovery pursuant to Federal Rule of Criminal Procedure 16(b).  To date, the defendant has not provided any reciprocal discovery.

The purpose of the defendant disclosure requirement is to ensure that discovery is "a two way street." *United States v. Stackpole*, 811 F.2d 689, 697 (1st Cir. 1987).  Defendants who do not comply risk the sanctions set forth in Rule 16(d)(2), including the exclusion of evidence. *See*, *e.g.*, *United States v. Scholl*, 166 F.3d 964, 972 (9th Cir. 1999) (affirming exclusion of evidence apparently withheld so that government would be unable to fully investigate).  Accordingly, if the defendant seeks to introduce evidence not timely produced to the government, the government may move to exclude it.

### M.   Exclusion of Witnesses

The United States will move for an order at trial excluding all witnesses from trial until their testimony has been completed, pursuant to Federal Rule of Evidence 615.

//

//

//

//

//

//

1

## VI.    CONCLUSION

2

The foregoing is submitted as a brief summary of the anticipated case and potential

3

evidentiary issues.  Should additional issues or questions arise at trial, the United States will

4

provide any additional briefing or information requested by the Court.

5

6

Dated:  September 24, 2018                                  Respectfully submitted,

7

8

_____/s/_____

9

Jennifer Hane

Andrew Mast

10

Arshia Najafi

Trial Attorneys

11

U.S. Department of Justice

Antitrust Division

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28